[Civ. No. 1396.   Second Appellate District.—July 29, 1913.]

## HARVEY B. DALTON et al., Petitioners, v. HARRY J. LELANDE, Respondent.

REFERENDUM—SUPPLEMENTAL PETITION—TIME FOR FILING.—A petition invoking the right of referendum which is found to contain an insufficient number of names of qualified electors, cannot be supplemented after the expiration of thirty days from the passage of the ordinance by the filing of another petition of like character, which latter contains enough additional names of qualified signers to make up the minimum number required by the statute.

ID.—PROVISIONS OF LOS ANGELES CHARTER—INCORPORATION IN SUBSEQUENT STATE LAW—CONSTRUCTION.—The provisions of the general laws regarding the initiative and referendum (Stats. 1911, p. 577) are an exact counterpart of the charter provisions of the city of Los Angeles, except that in the state law the "petitions shall be in all respects in accordance with," etc., while in the charter it is provided that "said petition shall be in all respects in accordance with the provisions of said section." And since the legislature enacted the state law after the provisions of the charter had received judicial construction, the propriety of following such construction is accentuated.

ID.—CONSTRUCTION OF STATUTE—SUBSEQUENT RE-ENACTMENT BY LEGISLATION.—Where a statute that has been construed by the courts has been re-enacted in the same or substantially the same terms, the legislature is presumed to be familiar with its construction and to have adopted it as part of the law.

ID.—CONSTRUCTION OF WORDS—INCORPORATION IN SUBSEQUENT STATUTE.—Where words and phrases employed in a new statute have been construed by courts to have been used in a particular sense in a former statute on the same subject, or one analogous to it, they are presumed to be used in the same sense in the new statute as in the previous one.

ID.—CONSTRUCTION OF CHARTERS—RULE APPLICABLE TO STATUTES.—A rule of construction involving legislative intent in adopting statutes previously construed applies with equal force to charter provisions.

ID.—CITY CHARTER—FORCE AND EFFECT OF PROVISIONS.—Under our constitution, charter provisions have the force and effect of legislative enactments within their constitutional limitations, the same being the organic law or local constitution of the city.

APPLICATION for Writ of Mandate directed to the Clerk of Los Angeles County.

The facts are stated in the opinion of the court.

Kemper B. Campbell, Guy E. Maurice, Frank G. Tyrrell, William Hazlett, and Frederick Baker, for Petitioners.

A. J. Hill, J. D. Fredericks, Byron Hanna, and Percy Hammon, for Respondent.

THE COURT.—This is an application for a writ of mandate commanding the respondent, clerk of the county of Los Angeles, to examine and from the great register ascertain whether or not the original and supplemental petitions filed by petitioners herein invoking the referendum, are signed by the requisite number of electors, and, if so found sufficient, to submit the same to the board of supervisors. It was stipulated upon the hearing that notice of the application for an alternative writ was waived, as well as the issuance of and a return to the alternative writ, and that the application be heard as for a peremptory writ, and if awarded, a peremptory writ should issue.

The admitted facts are these: An ordinance was enacted by the board of supervisors of Los Angeles County on June 2, 1913; within thirty days thereafter, to wit, on July 1, 1913, a referendum petition was filed which on its face was sufficient in form and substance; that thereafter, on July 9th, the respondent, as such clerk, made an examination and found the requisite number of signatures lacking, and so certified; that within ten days from such certification, but more than thirty days after the passage of the ordinance, a supplemental petition was filed, which *prima facie* presented the names of additional electors sufficient in number to complete a referendum petition under the constitution and laws of this state. When we have said that the original petition was in the form required we have determined that, while not, strictly speaking, expressing a protest against the proposed ordinance in exact language, nevertheless, it in substance was of such effect. The question, therefore, presented for consideration is this: Can a petition invoking the right of referendum which is found to contain an insufficient number of names of qualified electors be supplemented after the expiration of thirty days from the passage of the ordinance by the filing of another

petition of like character, which latter contains enough additional names of qualified signers to make up the minimum number required by the statute? The referendum right is one conferred by the constitution, which provides: "The initiative and referendum powers of the people are hereby further reserved to the electors of each county, city and county, city and town of the state, to be exercised under such procedure as may be provided by law. . . . In the submission to the electors of any measure under this section, all officers shall be guided by the general laws of this state, except as is herein otherwise provided. This section is self-executing, but legislation may be enacted to facilitate its operation, but in no way limiting or restricting either the provisions of this section or the powers herein reserved." (Const., art. IV, sec. 1.) As to the application of the referendum to legislative enactments, the constitution not only indicates the principles, but provides in express terms the means through which the same shall be carried out; in other words, provides that supplemental petitions may be filed to make up the aggregate number of names—not to correct defects found to exist in any original petition. The names in such case may be collected from many counties and the various documents in which they are contained make up but one petition in the end. Where the list of signatures has been transmitted from a county to the secretary of state, another list containing other and additional names from the same county may be transmitted to add to the aggregate number of signatures, and the document containing these additional names constitutes the "supplemental petition." And it seems very clear that all of these petitions, whether called original or supplementary, must be filed within ninety days from the date of the final adjournment of the legislature. The constitutional provisions distinctly declare: "Upon the presentation to the secretary of state, within ninety days after the final adjournment of the legislature, of a petition certified as herein provided, to have been signed by qualified electors equal in number," etc. And further: "A petition shall be deemed to be filed with the secretary of state upon the date of the receipt by him of a certificate or certificates showing said petition to be signed by the requisite number of electors of the state." These provisions cannot by any reasonable construction be said to mean

that supplemental petitions which only go to make up the aggregate of required signatures on the original petitions may be filed after the expiration of ninety days from the adjournment of the legislature. The secretary of state is not required to make any certificate until there has been filed with him petitions sufficient as to the number of signers. As to the exercise of the referendum power reserved to the electors of a county, the constitution provides that the procedure shall be provided by general law; and the constitution further provides that in the submission to the electors of any measure the officers shall be governed by the general laws of the state. The general laws of the state (Stats. 1911, p. 577), specify and particularize as to the procedure which shall control such affairs when it is sought to exercise the right by initiation. By this general law the right is expressly given to file a supplemental petition within ten days after certification of the insufficiency of the original. With reference to the referendum it provides: "Such petitions and the provisions of the law relative to the duty of the clerk in regard thereto and the manner of voting thereon, shall conform to the rules provided herein for the initiation of legislation by the electors." The provisions of the general laws regarding the initiative or referendum above referred to are an exact counterpart of the charter provisions of the city of Los Angeles, with but one point of difference, which is that in the state law it is said that "petitions shall be in all respects in accordance with," etc., while in the charter it is provided that "said petition shall be in all respects in accordance with the provisions of said section." We attach no importance to the use of the plural where the words "such petitions" are employed, as tending to support the contention that other than original petitions are there meant. The expression is a general one and refers, as we read the statute, to occasions where the referendum proceedings are instituted rather than to the number of petitions made use of in any one proceeding.

The precise question here involved was before this court in *Rushton* v. *Lelande, Clerk of the city of Los Angeles,* 15 Cal. App. 448, [115 Pac. 56], on appeal from the judgment of the Honorable N. P. Conrey, superior judge of Los Angeles County, wherein the opinion of said superior court was affirmed, and in which affirmation this court considered the

question involved as to the right of filing supplemental petitions, and determined that such right did not exist under the charter, and the provisions of the general law under consideration now being identical with the charter, we feel that that decision is decisive of the question here involved. That opinion determined: "That the words 'said petition shall be in all respects', etc., 'and be examined and certified,' etc., refer solely to the original petition provided for by section 198a, and refer solely to the form, substance, and certification of such original petition; that it is obvious that that portion of section 198a permitting amendments after thirty days cannot and does not apply to a petition which seeks to invoke the referendum. This is apparent from the provision of the section generally, to the effect that the ordinance passed shall not go into effect before thirty days, and that thirty days is the time given within which the electors shall file their protests, and upon the filing of which protests in the manner and form prescribed, and in no other event, is the ordinance suspended from operation beyond thirty days. It is plain that if the requisite petition constituting the protests be not filed within thirty days, the ordinance becomes effective, and being so effective, the referendum no longer applies to it, and if the elector desires relief from its operation, such relief must be worked out through the initiative section before referred to by a repeal of such ordinance, brought about by the manner therein provided. Otherwise, an insignificant number of voters might present a protest to the passage of an ordinance on the twenty-ninth day after its approval, and the insufficient character thereof being apparent, they could then file other and additional protests, each of which would have to be examined and certified, and if finally found insufficient, they should be returned to the protestants, without prejudice to the filing of a new petition to the same effect. In other words, by these obstructive methods a small minority of the electors might prevent an ordinance from becoming operative for a long period of time after the expiration of the time provided by the charter when the same should become operative. The same reasons do not apply to the initiative; that provides for the inauguration of new and independent legislation. No rights are affected, and no steps required to be taken until a petition of the requisite kind and character is on file. In-

terested parties might indulge in petitions without number, amend without limitation, commence and recommence proceedings under section 198a, without disturbing public affairs in the least. But such would not be the effect were the clause with reference to amendment to be construed as applying to the referendum.'' To the same point, the supreme court of Arkansas in the case of *State ex rel. Arkansas Tax Commission* v. *Moore,* (Ark.) 145 S. W. 199, has used language both pertinent and forceful. We quote: ''It was not intended that an act passed by the legislature should take effect conditionally and subject to the referendum, and continue in force from its passage, if the referendum was not ordered, or that an act once in force should be suspended by the referendum till its approval by the people. 'That which purports to be a law of a state is a law, or it is not a law according as the proof of the fact may be, and not according to the shifting circumstances of the parties. It would be an intolerable state of affairs if a document purporting to be an act of the legislature could thus be a law in one case and for one party, and not a law in another case and for another party; a law to-day, and not a law to-morrow; a law in one place, and not a law in another, in the same state. And whether it be a law or not a law is a judicial question, to be settled and determined by the courts and judges.' *Town of South Ottawa* v. *Perkins,* 94 U. S. 260, [24 L. Ed. 154].''
The opinion in the case of *Rushton* v. *Lelande,* was rendered and became final before the enactment of the statutes of 1911 and was a construction of the charter provision which was in form and substance adopted by the state legislation in its act prescribing the procedure in referendum cases. The propriety of adopting the decision in *Rushton* v. *Lelande* is accentuated because of this fact: It is a familiar rule where a statute that has been construed by the courts has been re-enacted in the same or substantially the same terms, the legislature is presumed to be familiar with its construction and to have adopted it as part of the law, unless it expressly provides for a different construction. Also where words and phrases employed in a new statute have been construed by courts to have been used in a particular sense in a former statute on the same subject, or one analogous to it, they are presumed, in the absence of a clearly expressed intent to the contrary,

to be used in the same sense in the new statute as in the previous statute. (*Shehan* v. *Louisville · etc. R. Co.,* 125 Ky. 478, [101 S. W. 380]; *Matter of Baird,* 126 App. Div. 439, [110 N. Y. Supp. 708]; *Cooper* v. *Yoakum,* 91 Tex. 391, [43 S. W. 871].) Under our constitution, charter provisions have the force and effect of legislative enactments within their constitutional limitations, the same being the organic law or local constitution of the city. (*In re Pfahler,* 150 Cal. 650, [88 Pac. 275].) A rule of construction involving legislative intent in adopting statutes previously construed applies with equal force to charter provisions.

Several other interesting questions have been exhaustively and learnedly argued by counsel for petitioners and respondent, but a review thereof is unnecessary, entertaining as we do the opinions hereinbefore expressed.

The writ is denied.