[Sac. No. 4160. In Bank.—June 17, 1930.]

THE PEOPLE, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant. (Three Cases.)

Guy V. Shoup, Henley C. Booth and Raymond Benjamin for Appellant.

U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Respondent.

F. M. Angellotti, O'Melveny, Tuller & Myers, Louis W. Myers, Gibson, Dunn & Crutcher and Norman S. Sterry, *Amici Curiae*.

CURTIS, J.—The sole question presented for decision to the trial court in these three actions was whether the street-car and interurban railways of the Southern Pacific Company, situated in the county of Alameda, were subject to a tax of five and one-quarter per cent or of seven per cent upon their gross receipts for the years 1920, 1921 and 1922. The answer to this question involves the correct interpretation of the amendment to the Constitution of the state adopted in 1910, and often referred to as Constitutional Amendment No. 1. By this amendment a new section was added to the Constitution which was designated as section 14 of article XIII of the state Constitution. By this amendment it was provided that taxes levied, assessed and collected upon certain forms of property specifically described therein should be entirely and exclusively for state purposes. This amendment further fixed the rates of taxation which the companies operating the various kinds of state revenue property were to pay, and it further provided in said section of the Constitution that "All railroad companies, including street railways" should annually pay a tax to the state upon their property equal to four per cent upon their gross receipts.

This constitutional amendment provided that, "The rates of taxation fixed in this section shall remain in force until changed by the legislature; two-thirds of all members elected to each house voting in favor thereof." Pursuant to the authority vested in the legislature by this provision of the amendment, the rates of taxation upon property set aside for state revenue purposes have been changed at various sessions of the legislature. (Stats. 1913, p. 3; Stats. 1915, p. 3; Stats. 1917, p. 336, and Stats. 1921, p. 20.) We are concerned principally with the last of these enactments as it was in force at the time the several assessments involved herein were levied.

By the statute of 1921, which is popularly referred to as the King Tax Bill, the legislature purported to separate railroad companies from street railway companies and to make the former subject to a tax of seven per cent and the latter, including interurban railway companies, subject to a tax of five and one-quarter per cent upon their gross earnings. In pursuance of the 1921 amendment, the board of equalization of the state, which is the body authorized by law to make and levy assessments upon state revenue property, levied assessments for the years 1921, 1922 and 1923, based respectively upon the gross receipts for the previous years, of five and one-quarter per cent upon the gross receipts of all street-car and interurban lines of the state, except the street-car and interurban lines of the defendant upon which said board of equalization levied an assessment of seven per cent upon their gross receipts. The defendant has paid said assessment to the extent of five and one-quarter per cent thereof, but refuses to pay the balance of said tax, or the difference between seven per cent and five and one-quarter per cent, or one and three-quarters per cent. The board of equalization and the plaintiff herein justify the discrimination which has been made in levying an assessment of seven per cent upon defendant's property, and an assessment of five and one-quarter per cent upon all other like property in the state, upon the fact that the defendant is a railroad company, and as such owns and operates the street-car and interurban railways involved herein, and that all the other street-car and interurban lines of railway in the state are either owned by strictly street-car corporations, or persons or corporations other than railroad companies. This argu-

ment was presented to the trial court before whom this action was tried, but it did not meet with the approval of said court, and the trial judge thereof requested the attorney-general in the preparation of his written argument to confine the same to the question of whether the legislature had the legal power to separate street railways and interurban railways from railroads proper or steam railroads, and to levy an assessment upon the former class of property different from that levied upon railroads proper. The trial court rendered judgment in favor of the plaintiff in each action, and we take it from the briefs on file that said judgments were predicated upon the conclusion of the trial court that the legislature was without authority to classify "street railways and interurban railways" separate and apart from "railroads" and to levy a tax on the property of one of said classes different from that levied on the property of the other. From the judgments in favor of the plaintiff the defendant has appealed in each action. The three actions are substantially alike, the only difference being that they are brought to recover the taxes alleged to be due during different years.

In support of the judgments, the attorney-general makes the same contentions before this court that were made in the trial court. The first of these is that the property of the defendant used by it in the operation of its street and interurban railways is subject to the tax of seven per cent upon its gross receipts from said property for the sole reason that the defendant is a railroad company and as such owned and operated said street-car and interurban lines of railway. The second of said contentions is that the legislature is without authority to classify street and interurban railway companies separate and apart from railroad companies and to provide for the levying of a tax against one of these classes different from that levied upon the other.

The first of respondent's contentions, we think is completely answered by the decision of this court in the case of *Southern Pac. Co.* v. *Richardson*, 181 Cal. 280 [184 Pac. 3]. In that case it was sought to subject to taxation for state purposes a system of ferry-boats between San Francisco and Oakland. These boats carried freight and passengers over what was called the Creek route, and were owned and operated by a railroad company, the defendant in the present actions, but they were in no way connected

with the railroad operated by the plaintiff railroad company or with any other railroad. It was the contention of the state in that action that if a railroad company should engage in the business of operating a ferry or any other public utility, not taxable for state purposes, and not necessary or convenient for the operation of its railroad, the gross receipts from the operation of such public utility must be included within the gross receipts from the operation of the railroad system and connections and the fixed percentage computed upon the whole sum. This in principle is much like the contention made by the respondent in the present action. Yet this court held that the position of the state in said action could not be maintained. It disposes of the matter in the following language found on page 285 of the opinion, ''The appellant argues that since subdivision (a) of section 14, which declares the duty to pay the taxes provided for in the opening paragraph, begins with the phrase, 'all railroad companies,' and in describing the kinds of property to be so taxed, closes with the phrase, 'and other property, or any part thereof, used exclusively in the operation of their business in this state,' it must follow that persons or corporations carrying on any business of a kind mentioned in the opening paragraph must be taxed in the same manner, and for state purposes exclusively, upon property which they may have and use exclusively in the operation of a separate public utility business in this state which otherwise would not be so taxable. If the meaning of the phrase 'their business in this state is to be enlarged so as to include any business other than the kinds made taxable by the first paragraph of the section, it could as well be said to include any kind of business carried on by such person or company, such, for example, as a farm, or a dry-goods store. This would be absurd and the appellant does not so contend. The argument is not sound. The entire context implies the contrary. The only reasonable interpretation is that the phrase refers only to the kinds of business which are declared to be so taxable in the opening paragraph and includes only the property which is used exclusively in the operation of such business. It was so held, in effect, by this court in *Lake Tahoe etc. Co.* v. *Roberts,* 168 .Cal. 551 (Ann. Cas. 1916E, 1196, 143 Pac. 786).''

Respondent, however, relies upon the last paragraph of the decision of this court in that case wherein the words "rail lines" are used, and insists that the decision definitely establishes that all property used by a railroad company exclusively in the operation of its "rail line" business in this state is "operative property," and its gross receipts therefrom are subject to the rate or percentage fixed by the legislature in the computation of the tax upon that property. In this respondent is in error. As we read the decision in that case, it expressly holds that only the property used by a railroad company in the operation of its railroad business in this state is operative property, and the portion of the opinion which we have quoted above we think fully supports this statement. We are further of the opinion that the last paragraph of said decision is not susceptible of the construction claimed for it by the respondent.

According to respondent's theory the tax which is to be levied and collected from property set apart for state revenue purposes is to be determined by the character of the person or corporation owning and operating said property and not by the nature or kind of property taxed, or the use to which said property may be devoted by its owner. In other words, if the present street-car line in the county of Alameda, now owned by the appellant should hereafter become the property of some other corporation not operating a railroad, it would cease to be subject to the seven per cent rate, and thereafter be liable only for a tax of five and one-quarter per cent. A similar point was raised in *Southern Pac. Co.* v. *Richardson, supra,* and it was there decided that such unusual and uncertain results were clearly not within the contemplation of the framers of said constitutional amendment. In considering this point the court on page 284 of the opinion said, "But under this claim the mere fact that the Creek Route ferry happens to be operated by the Southern Pacific Company, which is also operating a railroad within the state, would cause the property of this particular ferry to be excluded from taxation for local purposes in the city and county of San Francisco, the county of Alameda, and the city of Oakland, and make it taxable exclusively for state purposes under section 14, while all other ferries operating between said counties not owned by a railroad company or operating in connection with a railroad would be taxed

only for local purposes. Also, it would follow that if the Creek Route ferry should hereafter become the property of some other corporation which was not operating a railroad, its property would again become subject to local taxation. Such uncertain and unusual results were clearly not within the contemplation of the framers of section 14 of article XIII of the Constitution.''

■ As we read that decision we understand it to hold that it is not the ownership of the particular property that determines whether it is subject to state taxation, but it is the kind and character of the property, and the use to which it is devoted by the owner which determines that question. So in the present action, whether the property of the appellant is subject to a certain rate of taxation is determined, not by appellant's corporate character, but by the use to which appellant is devoting said property. It is conceded that the property of the appellant, the taxes on which it is sought to recover in these actions, was during the three years covered by said tax levies, used exclusively by the appellant in the operation of its street and interurban systems of railway, and no part of said property was used during said period of time in the operation of its railroad. It follows, therefore, that said property was subject to the tax fixed by law upon property used in the operation of street and interurban railways, and not to the tax fixed upon property devoted to the use and operation of railroads, if these two different kinds of property can be legally made subject to different rates of taxation.

■ This brings us to the second contention of the respondent which, as already stated, is that the legislature is without authority to separately classify street and interurban railway companies and to provide a rate of taxation upon the property of such companies different from that levied and assessed against the property of railroad companies. In support of its contention, the respondent first argues that the language of the Constitution is unambiguous in this respect and clearly indicates a lack of power in the legislature to make any such distinction between railroad companies on the one hand and street and interurban railway companies on the other.

Section 14 of article XIII of the Constitution as ratified and adopted in 1910, is in part as follows: ''Taxes levied,

assessed and collected as hereinafter provided upon railroads, including street railways, whether operated in one or more counties; sleeping-car, dining-car, drawing-room car and palace-car companies, refrigerator, oil, stock, fruit, and other car-loaning and other car companies operating upon railroads in this state; companies doing express business on any railroad, steamboat, vessel or stage line in this state; telegraph companies; telephone companies; companies engaged in the transmission or sale of gas or electricity; insurance companies; banks, banking associations, savings and loan societies, and trust companies; and taxes upon all franchises of every kind and nature, shall be entirely and exclusively for state purposes, and shall be levied, assessed and collected in the manner hereinafter provided. The word 'companies' as used in this section shall include persons, partnerships, joint stock associations, companies, and corporations.

"(a) All railroad companies, including street railways, whether operated in one or more counties; all sleeping-car, dining-car, drawing-room car, and palace-car companies, all refrigerator, oil, stock, fruit, and other car-loaning and other car companies, operating upon the railroads in this state; all companies doing express business on any railroad, steamboat, vessel or stage line in this state; all telegraph and telephone companies; and all companies engaged in the transmission or sale of gas or electricity shall annually pay to the state a tax upon their franchises, roadways, roadbeds, rails, rolling stock, poles, wires, pipes, canals, conduits, rights of way, and other property, or any part thereof used exclusively in the operation of their business in this state, computed as follows: Said tax shall be equal to the percentages hereinafter fixed upon the gross receipts from operation of such companies, and each thereof within this state. When such companies are operating partly within and partly without this state, the gross receipts within this state shall be deemed to be all receipts on business beginning and ending within the state, and a proportion, based upon the proportion of the mileage within this state to the entire mileage over which such business is done, of receipts on all business passing through, into, or out of this state.

"The percentages above mentioned shall be as follows: On all railroad companies, including street railways, four per cent; on all sleeping-car, dining-car, drawing-room car,

palace-car companies, refrigerator, oil, stock, fruit, and other car-loaning and other car companies, three per cent; on all companies doing express business on any railroad, steamboat, vessel or stage line, two per cent; on all telegraph and telephone companies, three and one-half per cent; on all companies engaged in the transmission or sale of gas or electricity, four per cent. Such taxes shall be in lieu of all other taxes and licenses, state, county and municipal, upon the property above enumerated of such companies except as otherwise in this section provided; provided, that nothing herein shall be construed to release any such company from the payment of any amount agreed to be paid or required by law to be paid for any special privilege or franchise granted by any of the municipal authorities of this state.'' As already noted said section of the Constitution provided that, ''The rates of taxation fixed in this section shall remain in force until changed by the legislature, two-thirds of all the members elected to each of the two houses voting in favor thereof.''

Purporting to act under the authority given to it under this provision of the Constitution, the legislature in 1921, amended section 3664a of the Political Code. (Stats. 1921, p. 20, sec. 3664a, Pol. Code.) In its amended form said section reads in part as follows:

''All railroad companies, including street railways, whether operated in one or more counties; all sleeping car, dining car, drawing-room car and palace car companies, all refrigerator, oil, stock, fruit, and other car-loaning, and other car companies, operating upon the railroads in this state; all companies doing express business on any railroad, steamboat, vessel, or stage line in this state; all telegraph and telephone companies; and all companies engaged in the transmission or sale of gas or electricity shall annually pay to the state a tax upon their franchises, roadways, roadbeds, rails, rolling stock, poles, wires, pipes, canals, conduits, rights of way, and other property, or any part thereof, used exclusively in the operation of their business in this state, computed as follows: Said tax shall be equal to the percentages hereinafter fixed upon the gross receipts from operation of such companies and each thereof within this state.

"The percentages above mentioned shall be as follows: On all railroad companies, seven per cent; on all street railways, herein defined to include interurban electric railways and gasoline propelled railways, five and a quarter per cent; on all sleeping car, dining car, drawing-room car, palace car companies, refrigerator, oil, stock, fruit, and other car-loaning and other car companies, five and one quarter per cent; on all companies doing express business on any railroad, steamboat, vessel or stage line, one per cent; on all telegraph and telephone companies, five and one-half per cent; on all companies engaged in the transmission or sale of gas or electricity, seven and one-half per cent.

"In the event that it shall be hereafter finally determined by the courts that the legislature is without power to fix a different percentage upon the gross receipts from operation of street railways than the percentage herein fixed for railroad companies, then the percentage upon the gross receipts from operation of street railways is hereby fixed at seven per cent."

This legislation is characterized by the respondent as "An attempt by the legislature to break up the class of 'railroad companies' established by the Constitution into two classes." Such an attempt, the respondent continues, "would be to undo that which the Constitution has carefully and deliberately done. It is in defiance of that clear and unmistakable language in the Constitution by which street railways of all kinds are expressly bound into the definition of 'railroad companies.'"

"The clear and unmistakable language in the Constitution," respondent asserts, which has bound all railroad companies and interurban railways into one class under the name of "railroad companies" is the expression, "All railroad companies, including street railways." This expression is found twice in said section 14 of article XIII of the Constitution, and in the following connections: In the second paragraph of said section it is provided that, "All railroad companies, including street railways, whether operated in one or more counties; . . . shall annually pay to the state a tax upon their franchises, roadways, . . . poles, . . . and other property, . . . computed as follows: Said tax shall be equal to the percentages hereinafter fixed upon the gross receipts from operation of such companies,

and each thereof within this state," etc. And in the third paragraph we find it stated that, "The percentages above mentioned shall be as follows: On all railroad companies including street railways, four per cent; . . . " Respondent further adds that, "In using this expression 'railroad companies, including street railways' the constitutional framers meant to remove any doubt as to whether a street railway company should be deemed a railroad company and all doubt was eliminated by the language employed."

We find some difficulty in agreeing with these positive statements of the respondent. In the first place, we find no definition of "railroad companies" in this entire constitutional amendment. Had "railroad companies" been directly defined in said amendment, and had the definition been broad enough to include all street railways, then respondent's position would be sound, and that would have ended this controversy. In fact, had the amendment so provided, this controversy in all probability would never have arisen. Reading the section, as a whole, we are unable to find any language therein which would justify us in holding that railroad companies have been defined at all, much less, have they been defined to include all or any kind of street railways. It would have been an easy matter to have set out therein a brief definition of railroad companies had the framers of said amendment intended to define that class of business. This method is frequently employed in legislation and not infrequently in framing constitutional amendments. The fact that they did not expressly define "railroad companies" furnishes at least some ground for holding that they did not intend to do so.

■ Neither do we think that by the use of the words, "all railroad companies, including street railways," the framers of the constitutional amendment intended that "a street railway company should be deemed a railroad company" for taxation purposes. Had the conjunction, "and" been used in the above expression instead of the word, "including," clearly no such contention could be successfully made. Can it be said that by the employment of the word, "including" any materially different result has been attained than would have followed by the use of the conjunction "and"? We think not. One reason for so holding is that practically the same expression is used in the first

three paragraphs of said section. If by the use of the expression "railroads, including street railways" in the first of said paragraphs it had been intended to declare that a street railway was to be deemed a railroad for taxation purposes, then all that would have been necessary in order to fix the tax upon this class of property would be, in the succeeding provisions of the section, to fix the tax on railroads or railroad companies alone. But this was not done. On the other hand, the expression, "railroad companies, including street railways," was carried on through the two remaining paragraphs of the section and the tax was thus fixed upon railroad companies and street railways and not alone on railroad companies. "Including" as defined by Cyc., volume 22, page 63, means "comprising, a term which imports addition, i. e. indicates something not included." Accepting this definition and applying it to the language before us, we think that it is apparent that by using the term, "including" it was simply the intention of the framers of the amendment to add to "railroad companies," street railway companies, and to make the property of each of these companies subject to taxation for state purposes at the rate fixed. This being so, there is nothing to justify the contention of respondent that by the use of the expression, "railroad companies, including street railways," it was intended that a street railway company should be deemed a railroad company for taxation purposes and accordingly a tax fixed upon the gross receipts of railroad companies would automatically apply to all street railway companies.

Unless the Constitution has so defined railroad companies, or has classified them so as to include street railway companies, then the provision of the Constitution giving the legislature power to change the rates fixed therein, confers ample constitutional authority upon the legislature to enact the legislation of 1921, which fixes a different rate of taxation for railroad companies than that fixed for street and interurban railway companies. We are, therefore, unable to agree with respondent's argument that by the plain and unambiguous language of the Constitution the legislature acted in excess of its authority in fixing a tax for street railway companies different from and less than that fixed for railroad companies.

Respondent further argues, if the language of the Constitution is in any way ambiguous in respect to such power being conferred upon the legislature, that the history of this constitutional amendment, and the action taken by the legislature of 1921, and the proceedings taken at subsequent sessions of the legislature show that it was not the intention that the legislature should be vested with such authority, and that no such authority has been given to the legislature by said constitutional amendment. We will briefly consider this argument.

As to the history of events leading up to the adoption of said constitutional amendment, it is a well-known fact and frequently referred to by this court, that said constitutional amendment was proposed by the legislature as the result of the work of the commission on revenue and taxation. This commission published a report in 1906, followed in the same year by its final report. These two reports were submitted to the legislature of 1907. Acting on these reports the legislature proposed an amendment to the Constitution to the people to be voted upon in 1908, embodying in most respects the provisions contained in the amendment of 1910. This proposed amendment failed of adoption. Thereupon, the tax commission recommended a new amendment which was adopted by the people in 1910. By this amendment section 14 was added to article XIII of the Constitution, and it is this amendment which we are now considering. Prior to the appointment of the tax commission in 1905, this court had held that "railroads" as used in section 10, article XIII of the Constitution did not apply to "street railways." (*San Francisco etc. Ry. Co.* v. *Scott,* 142 Cal. 222 [75 Pac. 575].) Respondent argues that in framing this constitutional amendment we must presume that this decision was taken into consideration by the members of the tax commission and the members of the legislature, and that by the use of the expression, "all railroad companies, including street railways," it clearly appears that it was the intention of those who framed this amendment "to have street railways treated in the same way as other railroads." Undoubtedly the commission must, if its members were familiar with the ruling of the court in the case of *San Francisco etc. Ry. Co.* v. *Scott, supra,* and we presume that they were, have known, had they in preparing

said amendment used simply the term "railroad," that street railways would not have been made liable for taxation for state purposes. They accordingly used the expression, "railroad companies, including street railways" to remove all doubt as to their intention that both these classes of property were reserved for state revenue purposes. They intended unquestionably to treat these two classes of property exactly alike, for in fixing the rates of taxation they applied the same rate to railroads as they applied to street railways. But there is nothing in their reports, or in the proposed amendment, to indicate that they intended to exempt these classes of property or either of them from the provision of the amendment giving the legislature power to change the rates so fixed.

Respondent further calls our attention to the various reports of the tax commission and contends that "classification of properties was paramount in the minds of the framers of the amendment of 1910." It is true that these reports frequently use the terms, "classes," "classify" and "classification," yet when the commission came to the framing of the proposed constitutional amendment it studiously avoided the use of any of these terms, as not one of these words is to be found in the entire amendment. It would seem that with the subject of classification in their minds, had the members of the tax commission intended to establish railroads and street railways into a general class under the name of railroads, they would have employed language directly expressive of such intention. As we have seen, this they did not do, nor did they, in our opinion, employ any language from which such an intention can reasonably be inferred.

Returning now to the action of the legislature of 1921, and to proceedings taken at subsequent sessions of the legislature, relied upon by respondent as showing that no power exists in the legislature to tax street railways separate and apart from railroads, respondent has called to our attention that the 1921 legislature incorporated into the statute of 1921, the provision already quoted to the effect that in the event it should be decided that the legislature was without power to fix a different percentage upon the gross receipts from the operation of street railways than that fixed for railroad companies, then the percentage for street rail-

ways should be the same as that fixed for railroads. Furthermore, at the same session of the legislature, there was proposed and submitted to the people an amendment to the said section 14 of article XIII of the Constitution, which had it been adopted, would have written into the Constitution the substance of the legislation enacted in 1921. This amendment was, however, defeated by the people at the election held in the following year. In 1925, the legislature submitted a proposed amendment to section 14 of article XIII which was ratified by the people and is now a part of said section and is designated as paragraph aa. This amendment simply provided for the taxation of so-called short line railroads at a rate of five and one-fourth per cent upon their gross receipts. The legislature of 1929 has proposed to the people at the next general election an amendment which, in the main, follows the language of the King Tax Bill but would, if adopted, change the gross receipts on street railways from five and one-fourth per cent prescribed in the act of 1921 to the rate of four and one-fourth per cent. (See Stats. 1929, p. 2254.)

Respondent argues from the facts just recited that in the first place the legislature doubted its authority to segregate street railways from railroads proper, and to fix a rate of taxation for one different from that fixed for the other. Evidently there was some uncertainty in the minds of the members of the legislature as to the extent of their power under the Constitution to change the rates so that street railways should pay a less or different percentage from that paid by railroads or they would not have incorporated in the act of 1921, the provision that the street railways should pay a tax of seven per cent on their gross receipts in case the courts should hold that the five and one-fourth per cent rate was illegal, nor would they have proposed to the people the constitutional amendment which, if adopted, would have made certain that which was at least to some, ambiguous. But that the members of the legislature of 1921 believed that they had the power to enact such legislation is satisfactorily shown by the fact that they acted upon that belief and enacted the statute of 1921. It is not to be presumed that they deliberately and intentionally enacted a statute which they believed was in excess of their power. Realizing, however, that the language of the Constitution

was to a certain extent ambiguous, in order that street railways should in no event escape taxation, they provided for the seven per cent rate in case they were without power to fix the five and one-fourth per cent rate. They further proposed the amendment to the Constitution for the purpose of clarifying the language found in said section of the Constitution and to remove all ambiguity therein. By these proceedings the legislature of 1921 was simply pursuing a safe course in the matter of legislation and at the same time it endeavored to clarify the section of the Constitution defining their powers. As to the action of the last legislature in proposing a constitutional amendment fixing the tax on gross receipts of street railways at four and one-fourth per cent, we fail to see how this in any way affects any question before us. The legislature evidently considered this a question of such importance that it should be settled by a vote of the people rather than by an act of the legislature. The members may all have been of the opinion that they possessed the power to fix the four and one-fourth per cent rate, but preferred that the question be submitted to the people for their approval or rejection.

We are, therefore, unable to arrive at any different conclusion as to the meaning of said section of the Constitution after a consideration of the foregoing events and circumstances than that already stated herein. By the terms of the Constitution the power and authority to change the rates of taxation is granted to the legislature. The section contains no direct restrictions or limitations on this grant of power. The only indirect limitation, which respondent claims has been placed upon the legislature is to be found in certain expressions in the section by the use of which the respondent contends that railroad companies and street railway companies have been bound into the definition of "railroad companies," or have been so classified that street railway companies are to be deemed "railroad companies" for taxation purposes. This contention we have held to be untenable.

There may be some ambiguity in the language used in the section of the Constitution, but this ambiguity is not sufficient to justify a court in declaring the legislation thereunder unconstitutional. In passing upon the constitutionality of an act of the legislature, all doubts are to

be resolved in favor of its validity. (*Veterans' Welfare Board* v. *Jordan,* 189 Cal. 124 [22 A. L. R. 1515, 208 Pac. 284]; *Title etc. Restoration Co.* v. *Kerrigan,* 150 Cal. 289 [119 Am. St. Rep. 199, 8 L. R. A. (N. S.) 682, 88 Pac. 356].) "An act of the legislature should not be declared unconstitutional by the courts unless it is clearly apparent that the act is violative of some provision of the Constitution." (*Deyoe* v. *Superior Court,* 140 Cal. 476, 490 [98 Am. St. Rep. 73, 74 Pac. 28, 33].) The power of the courts to declare a statute unconstitutional should never be exerted, except where the conflict between it and the Constitution is palpable and incapable of reconciliation. (*S. & V. R. R. Co.* v. *City of Stockton,* 41 Cal. 147, *People* v. *Sassovich,* 29 Cal. 480, and *San Francisco* v. *Industrial Acc. Com.,* 183 Cal. 273 [191 Pac. 26].)

The construction which we have placed upon the statute of 1921 is the identical construction given it by the department of our state government entrusted with the duty of levying and assessing taxes for state purposes—the state board of equalization. As stated in the opening of this opinion, the board of equalization, ever since the enactment of said statute, has assessed all the street and interurban railways in the state at the rate of five and one-fourth per cent, the rate fixed in said statute, except those of the appellant. This exception as to appellant's street and interurban railways was made not because the board was of the view that the statute of 1921 was invalid, but for the reason that the board of equalization was of the opinion that the street and interurban railways of the appellant were subject to the seven per cent rate by reason of the fact that they were owned and operated by the appellant, a railroad company. The board of equalization has never questioned the validity of the act of 1921, and ever since its enactment has conformed to its requirements in levying taxes generally upon street and interurban railways. "The contemporaneous and practical construction of a statute by those whose duty it is to carry it into effect, while not controlling, is always given great respect. And a contemporaneous interpretation long acquiesced in by all persons who could possibly have an interest in the matter, has been held to be sufficient to justify a court in resolving any doubt it might have as to the meaning of ambiguous language

employed by the legislature, in favor of sustaining such long unquestioned interpretation.'' (23 Cal. Jur. 775.) Furthermore, the legislature has construed the constitutional amendment of 1910 as vesting in it the power and authority to fix rates of taxation upon street railways separate and apart from those imposed upon railroads. Not only did the legislature of 1921 enact the King Tax Bill, but succeeding legislatures have acquiesced in its operation by failing to take any action looking toward its repeal or to materially amend it. ''Although the legislature cannot authoritatively fix the meaning of the Constitution, and its interpretation is not controlling upon the Court, yet, where the meaning is doubtful, the contemporaneous and long continued construction thereof by the legislature is entitled to great deference, and may be supposed to reflect the views of policy and modes of reasoning which prevailed among the framers of the Constitution.'' (5 Cal. Jur. 604.)

It thus appears that the legislative, and a department of the executive, branch of our state government, have by direct affirmative action and long acquiescence, placed a construction upon the statute of 1921 sustaining its validity. In passing upon its constitutionality we are not to ignore the contemporaneous construction placed upon it by these governmental agencies. However, we do not think it altogether necessary to invoke the rule of contemporaneous construction in the decision of these cases. We are satisfied that the other grounds relied upon and already stated herein present sufficient reasons for declaring and holding the act of 1921 a valid legislative enactment. But we refer to the fact that other departments of our state government have construed this statute mainly for the purpose of showing that the construction we have placed upon it coincides and agrees with the construction given it by the officials of the state whenever its validity has been questioned. Our final conclusion, therefore, is that the statute of 1921, being valid, the legal rate of taxation upon the street and interurban railways of appellant for the period of time covered by the complaints in these actions was five and one-fourth per cent upon their gross receipts. It follows that the assessments levied against the street and interurban railways of appellant for the years 1921, 1922 and 1923, in so far and to the extent that they exceeded said rate of five and one-fourth per cent are illegal

and void. The trial court gave judgment in these actions simply for this excess, all of the balance of said assessments having been paid by appellant. Said judgments are, and each of them is, reversed.

Richards, J., Preston, J., Shenk, J., Seawell, J., Waste, C. J., and Langdon, J., concurred.