[S. F. No. 16864. In Bank. Mar. 30, 1944.]

NAOMI J. PENAAT, Appellant, v. CLARA TERWIL-LIGER, Respondent.

William H. Penaat for Appellant.

Robert W. Kenny, Attorney General, H. H. Linney, Assistant Attorney General, and Adrian A. Kragen, Deputy Attorney General, as Amici Curiae on behalf of Appellant.

Edmund J. Holl for Respondent.

TRAYNOR, J.—Defendant failed to pay the county taxes for 1934 upon a lot that she owned in San Mateo

County. Plaintiff purchased the property at a tax sale on June 28, 1940, and subsequently brought this action to quiet her title thereto. The trial court held the tax sale void and entered judgment quieting defendant's title to the property. From this judgment plaintiff appeals.

The trial court held that the publication of the delinquent tax list and of the notice of sale did not comply with sections 3766, 3767 and 3771a of the Political Code. The delinquent tax list was published on June 5, 12 and 19, 1935, in a separately folded section of the Burlingame Advance Star dealing exclusively with the delinquent tax list. The notice of sale was published on June 7, 14 and 21, 1940, in a separately folded section of the San Mateo Times, also devoted exclusively to the delinquent tax list except for a map of the world used as a filler on the last page.

Before 1921, section 3766 of the Political Code provided that publication of the delinquent tax list "must be made once a week for three successive weeks, in some newspaper, *or supplement thereto,* published in the county. . . ." (Italics added.) This section was amended in 1921 to provide: "the publication must be made once a week for three successive weeks in some newspaper *of general circulation* published in the county. . . ." (Italics added.) Before it was amended tax collectors and others might easily have supposed that the section authorized publication of the delinquent tax list in a supplement that was circulated separately from the newspaper because of the provision that the delinquent tax list could be published either in a newspaper "or" in a supplement to a newspaper. Such a construction, however, would probably have been erroneous in view of *Tully* v. *Bauer,* 52 Cal. 487, involving the antecedent of section 3766 in the Revenue Act of 1857, as amended in 1859 (Stats. 1859, pp. 343, 348). It was therein provided that the delinquent tax list should be published "by one insertion, one time per week, for three successive weeks, in some paper published in the City and County, or in a supplement to such paper." The delinquent tax list was published in a supplement that was not circulated coextensively with the newspaper. The court held the publication invalid on the ground that it was the intent of the statute to authorize publication "in a supplement which was distributed for circulation generally with the newspaper." In revising section 3766 in 1921, the Legislature may well have decided to elim-

inate the words "or in a supplement thereto," rendered superfluous by the Tully case, to prevent any misinterpretation by those concerned with the publication of delinquent tax lists.

Before the 1921 amendment, section 3766 was also open to the construction that since the delinquent tax list had only to be published in "some newspaper" it was immaterial how restricted the circulation of the newspaper might be. By adding the words "of general circulation" the Legislature made it clear that the newspaper must be one of general circulation. (See *In re Herman,* 183 Cal. 153 [191 P. 934]; 19 Cal.Jur. 1072, 1074; Pol. Code, secs. 4460, 4462.)

As amended, the section simply requires publication of the delinquent tax list "in some newspaper of general circulation" without specifying that publication should or should not be in a supplement. This provision is like a multitude of other provisions for the publication of notices in newspapers. (See, for example, Code Civ. Proc., secs. 413, 1277; Prob. Code, secs. 261, 700; 7 Cal.Jur. 471; 10 Cal.Jur. 39, 40; 11 Cal.Jur. 246, 640.) For the convenience of the public and the publisher, newspapers are usually folded into two or more sections, each of which is an integral part of the newspaper. The question is not in what part of a newspaper the delinquent tax list is published, but whether it is published in a newspaper of general circulation as an integral part thereof and distributed as such to subscribers. Thus in *Lent* v. *Tillson,* 72 Cal. 404, 430 [14 P. 71], 140 U.S. 316, 333 [11 S.Ct. 825, 35 L.Ed. 419], a special improvement bond act provided for the publication of prescribed notices in "two of the daily papers printed in the City of San Francisco." (Stats. 1875-1876, pp. 433, 434.) The notices were published on a third sheet, designated as a supplement, of a two-sheet newspaper. The court held that the notice was published in compliance with the statute, for the supplement, even though designated as such, was "part and parcel of the newspaper itself" and was distributed coextensively with the rest of the paper. (See, also, *Heberling* v. *Moudy,* 247 Mo. 535 [154 S.W. 65]; *Star Co.* v. *Colver Pub. House,* 141 F. 129; 19 Cal.Jur. 1068; 46 C.J. 19; 50 C.J. 541.)

The publication of a delinquent tax list in a separate section, uncluttered by other reading matter, makes it readily available to those interested. It would be highly arbitrary to require that other reading matter be interlarded with such

lists in disregard of the exigencies incident to the editing of a newspaper as a whole. Often the delinquent tax lists run to such lengths that it would not be feasible to punctuate the successive pages with fragments of news columns or advertising matter. The requirement of publication in a newspaper of general circulation can hardly be construed as necessitating such a departure from good editorial practice.

In *Clayton* v. *Schultz*, 22 Cal.App.2d 72 [70 P.2d 512], on which defendant relies, the delinquent tax list was "separately bound and covered and was not in anywise connected with the main part of the paper." (22 Cal.App.2d 74.) In the present case, however, the newspaper in each instance was folded in two sections, the general news and advertising being in the first section and the delinquent tax list in the second. The two sections were folded together, and together constituted the complete edition of the newspaper, distributed to all subscribers on the dates of publication. Any suggestion in *Clayton* v. *Schultz, supra*, that a section of a newspaper is dissociated from the whole by being separately folded or by dealing exclusively with one subject is disapproved.

Since there is no question that the publications were newspapers of general circulation, and since the sections in which the delinquent tax lists appeared were integral parts of the newspapers for the days in question, such lists were published in compliance with the statutory requirements.

Defendant contends that the sale of the property on June 28, 1940, was void on the ground that a notice of the sale was not mailed pursuant to section 3771a of the Political Code providing that preliminary to any sale at public auction "the tax collector shall, within five days after the first publication of said delinquent list, mail a copy of said list or publication, postage thereon prepaid and registered, *to the party to whom the land was last assessed next before such sale, at his last known address,* said notice to be mailed at least twenty-one days before the date of sale. . . ." (Italics added.) The parties to whom the land was last assessed next before the sale on June 28, 1940, on the 1940 assessment roll, were Clara Terwilliger and R. A. Jenkins. The first appearance of these names as owners of the property was on the 1935 assessment roll, but neither on this roll nor on any subsequent one were these names accompanied by addresses. It is well settled that the tax collector must look

at the assessment roll to see "whether the address of the party appears thereon. If it does, he must mail a notice. If it does not, no mailing of notice is required." (*Healton* v. *Morrison*, 162 Cal. 668, 673 [124 P. 240]; *Kehlet* v. *Bergman*, 162 Cal. 217, 218 [121 P. 918]; *Jacoby* v. *Wolff*, 198 Cal. 667, 681 [247 P. 195]; *Crouch* v. *Shafer*, 177 Cal. 154 [169 P. 1019].) Defendant calls attention to the assessment roll for 1934, which shows the owners as Everett H. and Pearl B. Davis, care of Cypress Lawn Cemetery, Colma, California, but these were not the parties to whom the land was last assessed next before the sale in 1940 and were therefore not the parties to whom the notice had to be mailed.

The judgment is reversed.

Gibson, C. J., Curtis, J., Edmonds, J., and Schauer, J., concurred.

CARTER, J.—I dissent. If this were a case of first impression before this court, I would be disposed to agree with the conclusion reached in the majority opinion that the publication of the delinquent tax list and of the notice of sale complied with the requirements of sections 3766, 3767 and 3771a of the Political Code and that the judgment should therefore be reversed. But I am convinced that the case of *Clayton* v. *Schultz*, 22 Cal.App.2d 72 [70 P.2d 512], is squarely on all fours with this case and that these two cases cannot be fairly distinguished. While the majority opinion attempts to distinguish the factual situation in the case at bar from that existing in the Clayton case, I am sure that there is not a sufficient difference in the facts of the two cases to change the result. In the Clayton case the delinquent tax list was published in what was termed a supplement to the "Twin Peaks Sentinel." This supplement carried no other printed matter than that pertaining to the delinquent tax list. It was separately bound and covered and was not in anywise connected with the main part of the paper. The same situation exists in the case at bar. The delinquent tax list of San Mateo County, advertising the property here involved for sale, was published in a separately folded section of the "Burlingame Advance Star." This section carried the name and trade-mark of the newspaper at the top of the page, but there was printed therein no news or any other reading matter except that dealing exclusively with the delinquent tax list. The notice of sale of the lot in question

was published in 1940 in a similar separately folded section of the "San Mateo Times," also devoted exclusively to the delinquent tax list, with no news or other reading matter except a map of the world, which was put in as a "filler" on the last page.

The trial court found that these publications did not comply with section 3766 of the Political Code (now sec. 3356, Rev. and Tax. Code).

So, then, we have a situation in both of these cases which is substantially identical, the delinquent tax list and notice of sale in each case being published in a separately folded section of the newspaper devoted exclusively to the publication of the delinquent tax list and notice of sale of property for delinquent taxes. So far as appears from the opinion in the Clayton case, this separately folded section was circulated with and as a part of the newspaper which published it. To say that the delinquent tax list in the Clayton case was published in a supplement to a newspaper and that the one in the case at bar was not, is to state a clear contradiction.

The majority opinion does not purport to discuss the definition of what constitutes a supplement. In fact, the majority opinion does not state whether or not the sections of the paper in which the delinquent tax list and notice of sale were published were or were not supplements to the papers in which they were published. What the majority opinion in effect holds is that whether the sections of the papers in which the delinquent tax list and notice of sale were published were supplements or separate sections of the newspaper is immaterial, and that such publications constitute compliance with the provisions of sections 3766, 3767 and 3771(a) of the Political Code. In so holding the majority opinion in effect overrules *Clayton* v. *Schultz, supra,* without expressly so stating.

The case of *Clayton* v. *Schultz, supra,* was decided by the District Court of Appeal of the Third Appellate District on July 19, 1937, and a hearing was denied by this court in said case on September 16, 1937, without a dissenting vote of the members of this court. In said case the District Court of Appeal said: "Prior to 1921, section 3766 of the Political Code of this state provided as follows: 'Manner of making publication. The publication must be made once a week for three successive weeks, in some newspaper, *or supplement thereto,* published in the county. . . .'

"The foregoing section was amended in 1921 to read as follows: 'Publication of delinquent tax lists. The publication must be made once a week for three successive weeks in some newspaper of general circulation published in the county. . . .'

"Obviously it was the intention of the legislature to eliminate publications of delinquent tax lists in supplements to a newspaper, and to confine the publications thereof to a regular or main issue of a newspaper of general circulation."

Since the decision in the Clayton case the Legislature has held three regular sessions and numerous special sessions and no attempt has been made to amend section 3766 of the Political Code; in fact, at the 1939 session of the Legislature said section was re-enacted as section 3356 of the Revenue and Taxation Code. (Stats. 1939, ch. 154.)

It is well settled that where a statute is re-enacted after it has been construed and interpreted by an appellate court, there is a strong presumption of the legislative intent to adopt the construction and interpretation placed thereon by the court. (*Union Oil Associates* v. *Johnson*, 2 Cal.2d 727 [43 P.2d 291]; *In re Nowak*, 184 Cal. 701 [195 P. 402]; *Dalton* v. *Lelande*, 22 Cal.App. 481 [135 P. 54]; *In re Li Po Tai*, 108 Cal. 484 [41 P. 486]; *State Com. in Lunacy* v. *Welch*, 154 Cal. 775 [99 P. 181]; *Lindsay-Strathmore I. Dist.* v. *Superior Ct.*, 182 Cal. 315 [187 P. 1056]; *Blodgett* v. *Superior Ct.*, 210 Cal. 1 [290 P. 293, 72 A.L.R. 482]; *Lightner Mining Co.* v. *Lane*, 161 Cal. 689 [120 P. 771, Ann.Cas. 1913C 1093]; *Jaeger* v. *Jaeger*, 73 Cal.App. 128 [238 P. 139]; *Blanchard* v. *Norton*, 49 Cal.App.2d 730 [122 P.2d 349]; *Holmes* v. *McColgan*, 17 Cal.2d 426 [110 P.2d 428]; *Estate of Hebert*, 42 Cal.App.2d 664 [109 P.2d 729]; *In re Halcomb* 21 Cal.2d 126 [130 P.2d 384].) It has also been held that a later meeting of the Legislature without changing a statute after it has been construed by the courts is presumptive evidence that the Legislature is satisfied with the judicial interpretation. (*Slocum* v. *Bear Valley Irrigation Co.*, 122 Cal. 555 [55 P. 403, 68 Am.St.Rep. 68]; *People* v. *Southern Pac. Co.*, 209 Cal. 578 [290 P. 25].) Notwithstanding the apparent approval by the majority opinion of the interpretation placed upon section 3766 of the Political Code by the District Court of Appeal in its opinion in *Clayton* v. *Schultz, supra,* and by this court as evidenced by its denial of the petition for hearing in that case, and notwithstanding the express declaration

in *Clayton* v. *Schultz, supra,* that: "Obviously, it was the intention of the legislature to eliminate publications of delinquent tax lists in supplements to a newspaper, and to confine the publications thereof to a regular or main issue of a newspaper of general circulation," the majority opinion in the case at bar states: "In revising section 3766 in 1921, the Legislature may well have decided to eliminate the words 'or in a supplement thereto,' rendered superfluous by the Tully case, to prevent any misinterpretation by those concerned with the publication of delinquent tax lists." I think it is clear that the two declarations above quoted as to the legislative intent in amending and revising section 3766 of the Political Code in 1921 are diametrically opposed, and this court is placed in the unfortunate position of giving expression to a legislative intent contrary to that which the Legislature has at least tacitly approved by failing to amend or revise section 3766 of the Political Code since the decision of the case of *Clayton* v. *Schultz, supra,* in 1937. ·

The majority opinion also invades the province of the Legislature in declaring what should be the legislative policy with reference to the manner and form of publishing delinquent tax lists and notices of sale of property for delinquent taxes. In this regard the majority opinion states: "The publication of a delinquent tax list in a separate section, uncluttered by other reading matter, makes it readily available to those interested. It would be highly arbitrary to require that other reading matter be interlarded with such lists in disregard to the exigencies incident to the editing of a newspaper as a whole. Often the delinquent tax lists run to such lengths that it would not be feasible to punctuate the successive pages with fragments of news columns or advertising matter. The requirement of publication in a newspaper of general circulation can hardly be construed as necessitating such a departure from good editorial practice." The foregoing statement discloses an unfamiliarity with the practical problems incident to the publication of delinquent tax lists. There is no basis from either a legal or practical standpoint for the statement that "other reading matter be interlarded with such lists" in order to satisfy the requirement that such lists be published in a newspaper of general circulation and not in a supplement thereto. It is a matter of common practice, and so common that it should be the subject of judicial notice, that delinquent tax lists

have been published, in other than supplements or separate sections of newspapers devoted exclusively to delinquent tax lists, throughout the State of California since the amendment to section 3766 in 1921, and I have never yet observed in any of such lists "other reading matter interlarded with such lists." I am sure it will be a shock to both the tax collecting officials and the newspaper men to hear that such practice has been suggested as a requirement for the valid publication of delinquent tax lists in newspapers in accordance with the interpretation placed upon section 3766 of the Political Code by the District Court of Appeal and this court in the case of *Clayton* v. *Schultz, supra.*

In my opinion the majority opinion in this case will create confusion and uncertainty in the administration of the tax laws of this state for the reason that the opinion fails to define what constitutes a "supplement" and approves the decision of the District Court of Appeal in *Clayton* v. *Schultz, supra,* which clearly holds that the publication of a delinquent tax list in a supplement to a newspaper is not in compliance with the provisions of section 3766 of the Political Code. The question will, no doubt, arise in numerous cases as to whether a separate section of a newspaper devoted exclusively to the publication of a delinquent tax list constitutes a supplement within the interpretation of the Clayton case or is simply a section of the newspaper and not a supplement within the interpretation of the majority opinion in this case.

In the case at bar the trial court found that both the delinquent tax list and notice of sale were published in supplements to the newspapers, and did not, therefore, comply with the provisions of section 3766 of the Political Code. The District Court of Appeal of the First Appellate District, Division Two, affirmed the judgment of the trial court. Both of these courts held that under the interpretation of section 3766 of the Political Code by the decision in *Clayton* v. *Schultz, supra,* the publications were made in a supplement to such newspaper in violation of the provisions of said section. As heretofore stated, the majority opinion does not state that the publications involved in this case were not made in supplements to the newspapers, and fails to define what constitutes a supplement.

When this case was before the District Court of Appeal of the First Appellate District, Division Two, an opinion was prepared therein by Honorable Maurice T. Dooling,

Jr., sitting as justice pro tem. of said court, affirming the judgment of the trial court. This opinion was concurred in by Honorable John T. Nourse, presiding justice, and Honorable Homer R. Spence, associate justice of that court. I am in accord with the views expressed in said opinion and adopt the following portion thereof as a part of this dissent: ''Appellant calls attention to the very general practice of newspapers of printing their regular issues in two or more separately folded sections, and argues that in view of such practice the separately folded delinquent tax lists in question were not supplements to the newspapers, but parts of the 'regular or main issue' of such papers.

'' 'Supplement' is defined in Funk & Wagnalls New Standard Dictionary of the English Language (1933) as: ''Something added that supplies a deficiency; especially, an addition to a publication. In a newspaper it is often a separate sheet. . . .''

''In Webster's New International Dictionary, 2d ed. (1935), we find the following: 'Specif., a part added to, or issued as a continuation of, a book or paper, to make good its deficiencies, correct its errors, or provide special features not ordinarily included.'

''In seeking to determine the purpose of the Legislature in eliminating the provision from section 3766, Political Code, which had theretofore authorized the publication of the tax list in a supplement to a newspaper we are entitled to look to these definitions of the term in standard and recognized works on the subject. Tested by these definitions we are satisfied that the delinquent tax lists were published in supplements to the newspapers. The only reason for the publication and distribution of the entirely distinct sections in question was, in the language of Webster's to 'provide special features not ordinarily included,' i. e. the delinquent tax list, and to 'make good its deficiencies' i. e. the omission of the delinquent tax list from the main section of the newspaper. It was 'a part added to' the paper in each instance for those purposes and those alone by way, to quote Funk & Wagnalls, of 'a separate sheet' or sheets. The newspaper in each instance was a complete newspaper without the section containing the delinquent tax list. The section containing this list added to the newspaper such list and nothing more. We can conceive of no meaning to be given to the word 'supplement,' eliminated from this code

section in 1921, unless it means a separately folded or bound page or pages added to and distributed with the newspaper and containing no printed matter which would otherwise appear in the newspaper except the list of delinquent taxes. The use of the map of the world as a filler in the 1940 publication does not in our opinion change this result, but conceding that it might, the 1935 publication contained nothing at all but the tax list.

"The cases and quotations from Corpus Juris cited by appellant are not in point. It may be conceded that normally provision for publication in a newspaper is satisfied by publication in a supplement thereto which is fully circulated as a part of the newspaper. But in view of the statutory history of section 3766, Political Code, it must be construed, as pointed out in *Clayton* v. *Schultz, supra,* as if it read 'in a newspaper, and not in a supplement thereto.'

"The distinction is clearly recognized in *Morton* v. *Horton,* 189 N.Y. 398 [82 N.E. 429], and *Whitney* v. *Bailey,* 88 Minn. 247 [92 N.W. 974]. In the Morton case the statute of New York provided that certain publications should be 'in the bodies of the newspapers and not in a supplement' and others should be published in 'two newspapers.' The court of appeals of New York held that the latter type of publication might be in supplements to the newspapers, although the former clearly could not. In the Whitney case the law required the delinquent tax list to be published 'in a designated newspaper, or partly in such paper and partly in a supplement issued therewith.' It further provided that the 'forfeited list' should be appended to the delinquent list. The delinquent list 'commenced in the newspaper, but it was concluded in the supplement, and then followed the forfeited list; all thereof being in the supplement.' The Minnesota court held, under the peculiar language of their statute, that a portion of the delinquent list having been published in the main body of the newspaper the publication complied with the statutory requirement.

"It may be said of these cases, and of all the cases on the subject which we have examined, that uniformly they proceed on the theory that the publication of tax lists on separately folded sheets constitutes publication in a supplement, the question involved in the cases generally being whether the publication in a supplement constitutes a publi-

cation in a newspaper within the meaning of the particular statute.

"Appellant complains that the judgment appealed from quiets defendant's title without securing the repayment of taxes, penalties and costs paid out by appellant. (*Holland* v. *Hotchkiss*, 162 Cal. 366 [123 P. 258, L.R.A. 1915C 492].) There is nothing in the point. The judgment orders payment by respondent of $39.09 'taxes, costs, penalties and interest' to appellant. It gives judgment to respondent for $43.50 costs against appellant. The amount of costs is not questioned on this appeal. Since the costs exceed the amount which the judgment finds appellant entitled to be repaid she is fully protected by off-setting one against the other."

For the reasons above stated I am of the opinion that the judgment of the trial court should be affirmed.

Shenk, J., concurred.

Respondent's petition for a rehearing was denied April 27, 1944. Shenk, J., and Carter, J., voted for a rehearing.