[Civ. No. 1251. Second Appellate District.—November 6, 1912.]

## J. ROSS CLARK, Petitioner, v. SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF LOS ANGELES, Respondent.

GUARDIANSHIP—CHANGE IN TEMPORARY CUSTODY OF INFANT—RESTRICTIONS—EVIDENCE SUPPORTING ORDER—CERTIORARI.—An order removing an infant from the temporary custody of its paternal grandfather, who had applied for final letters of guardianship thereof, and restoring its temporary custody to its mother, subject to restrictions, pending the final hearing of the application, that a nurse to whom its mother had committed the charge thereof be retained as such, who should take the child daily to the home of its grandparents, and that the mother should be forbidden to take the child out of the city where the court was held, was a proper order, subject to such restrictions; and there being sufficient evidence to support it, as made, it cannot be annulled upon *certiorari*, on petition of its paternal grandfather.

ID.—JURISDICTION TO CHANGE TEMPORARY CUSTODY—SHOWING OF IMPERILMENT OF CHILD'S WELFARE.—The court had jurisdiction to change the temporary custody of the child, pending the hearing of the petition, under the provisions of section 1747 of the Code of Civil Procedure, when it appears to the satisfaction of the court, either from a verified petition or upon affidavits, that the welfare of the minor will be imperiled if such minor is allowed to remain in the custody of the person then having the care of such minor.

ID.—MODE OF PROCEDURE TO OBTAIN CUSTODY OF CHILD.—Proceedings affecting infants and the appointment of guardians are special in

20 Cal. App.—20

their nature and must be had in accordance with the procedure outlined by the code. Where the first order appointing the grandfather, as temporary guardian of the child, was made without authority, it may be treated as of no effect. The superior court, before it was authorized to provide for a change in the temporary custody of the minor, must have had a proper motion presented to it, and some evidence to the fact that the best interests of the child would be imperiled unless such order was made.

ID.—PROPER PROCEDURE BY MOTHER—SUFFICIENCY OF SHOWING.—Where the mother's procedure by motion was properly made, to secure a change in the temporary custody of the minor, if the action taken by the court thereunder, can be sustained by any evidence whatsoever which was presented to the superior judge, however slight that evidence may be, the appellate court will not disturb his conclusion.

ID.—CONSTRUCTION OF CODE PROVISION—BEST INTERESTS OF CHILD.—To say that the best interests of the child shall be imperiled before the action indicated by section 1747 of the Code of Civil Procedure can be taken, amounts to no more than to say that, whenever it appears to be for the best interests of the minor such change of custody may be ordered. The consideration for the welfare of the child is of first importance.

ID.—RIGHT OF PARENT OF MINOR TO CUSTODY NOT A PROPERTY RIGHT—DISCRETION OF COURT.—The parent of a child has no property right therein, and the privilege of the parent to have the custody of the child is only a matter of right when the parent is found to be reasonably fitted to become such guardian, and the parent's temporary custody pending the application of another person for guardianship, may be reasonably limited and restricted under the discretionary power of the court.

APPLICATION for Writ of Certiorari to annul an order of the Superior Court of Los Angeles County relating to the temporary custody of an infant child.

The facts are stated in the opinion of the court.

J. W. McKinley, C. O. Whittemore, and Herbert L. McNair, for Petitioner.

Flint, Gray & Barker, Oscar C. Mueller, and Leo V. Youngworth, for Respondent.

THE COURT.—Application in *certiorari* to annul an order made by the superior court relating to the temporary custody

of an infant aged two and one-half years, named J. Ross Clark II.

The child is the son of Walter Miller Clark and Virginia M. Clark (Tanner). The father was lost at sea on or about the fifteenth day of April, 1912, and a few months thereafter, and on or about the twenty-sixth day of September, 1912, the mother of the boy married one Tanner at the city of New York. Immediately upon her marriage she departed for Paris, France. At the time of her departure from California for the east she left the child at her mother's place of residence in charge of Margaret Heffron, a nurse. After the mother had gone away J. Ross Clark, the parental grandfather of the boy, obtained the custody of the child by causing its nurse to take it to his home. He had previously been appointed, with the consent of the mother, as guardian of the estate of the minor. On October 8, 1912, he filed a petition in the superior court asking for letters of guardianship of the person of the boy. At the time this petition was filed an order was made by the superior court giving temporary guardianship of the person of the minor to the petitioner pending the final hearing on the application. When news of the latter proceedings was transmitted to the boy's mother, who was then in France, she immediately returned to the city of Los Angeles and proceeded in the superior court to file an answer to the petition mentioned of J. Ross Clark and to ask that the temporary custody of the minor be given to her. The court after hearing the parties made an order in the following form:

"It is ordered, that the temporary custody of the minor J. Ross Clark, II, be restored to his mother, Virginia M. Tanner, and that that portion of the order herein, dated October 8th, 1912, providing for temporary guardianship of the minor be set aside and that the question of the guardianship of the person of said minor be left to be determined at the hearing herein on November 20th, 1912. It is further ordered, that Miss Margaret Heffron be retained as the nurse of said child, and it is further ordered that said nurse take said child to the home of its grandparents, Mr. and Mrs. J. Ross Clark, at least daily, until the further hearing herein, and said nurse to take said child to said home of Mr. and Mrs. J. Ross Clark at such other times as, in the judgment of said

nurse, may deem proper and advisable under the circumstances. It is further ordered, that under no circumstances shall said child be removed from its home in the city and county of Los Angeles.''

It is this order of the superior court that we are asked to annul on the ground that it was entered without jurisdiction. On the hearing had, which was followed by the making of the order complained of, affidavits were introduced in evidence and various witnesses heard. It was the claim of J. Ross Clark that the child had been abandoned by its mother and that it was for the best interests of the minor that the custody be retained by him. Margaret Heffron had been the child's nurse from October 6, 1911, during the lifetime of his father, and continuously thereafter. She made affidavit that the mother, prior to her going to New York where she was married to Mr. Tanner, and after the death of her first husband in April, 1912, made two trips to San Diego, one of a week's duration, and that at other times she was absent for days at a time, leaving the child always in the care of said nurse, and that while at home and in the same house with the child, frequently made no effort to see him, one of such periods being from Saturday noon until Monday noon following; and that the mother was absent from him nearly every day and frequently for the whole day and that she paid very little attention to the infant. On the other hand, the mother asserted that she had great affection for the child. She asserted further that she had gone to Paris only at the insistence of the new husband who was called thence by the illness of his mother. From the affidavits filed it appeared that the manner in which J. Ross Clark obtained possession of the child was a question of dispute, it being contended by him that the grandmother, in whose home the child was, consented that it be taken by him, and this statement was corroborated by that of the nurse, although denied by the grandmother.

If the custody of the minor was in J. Ross Clark at the time he filed his petition for letters of guardianship of its person, then the authority of the court to disturb that custody pending a hearing on the petition must be found in the provisions of section 1747 of the Code of Civil Procedure which, in part, provides as follows: ''In all such proceedings, when

it appears to the satisfaction of the court, either from a verified petition, or from affidavits, that the welfare of the minor will be imperiled if such minor is allowed to remain in the custody of the person then having the care of such minor, the court may make an order providing for the temporary custody of such minor until a hearing can be had on such petition.'' It seems to be admitted that the first order appointing J. Ross Clark temporary guardian of the minor was made without authority and may be treated as of no effect. As to the application of the mother upon which the court in the second instance acted, that application may be considered as one on behalf of the parent under the provisions of the section quoted to remove the minor from the temporary custody of J. Ross Clark pending hearing on the petition for letters of guardianship. Proceedings affecting infants and the appointment of guardians are special in their nature and must be had in accordance with the procedure outlined by the code. The superior court, before it was authorized to provide for a change in the temporary custody of the minor, must have had a proper motion presented to it and some evidence to the fact that the best interests of the child would be imperiled unless such order was made. Such a motion was presented on behalf of Mrs. Tanner and if the action taken can be sustained by any evidence whatsoever which was presented to the superior judge, however slight that evidence may be, we cannot here disturb the conclusion there made. We think that the order finds some support in the affidavits of the parties and testimony heard. To say that the best interests of the child shall be imperiled before the action indicated by section 1747 can be taken, amounts to no more, in our opinion, than to say that whenever it appears to be for the best interests of the minor such change of custody may be ordered. And this consideration for the welfare of the child is of first importance; the parent of a minor has no property right in his or her offspring and the privilege of the parent to have awarded to it the custody of the child is only a matter of right when the parent is found to be reasonably fitted to become such guardian. As is said in *In re Lungberg,* 143 Cal. 402, [77 Pac. 156]: ''The right of the state to provide for the disposition of the custody of children whose safety and welfare are menaced by the conduct or

*incompetency of their natural guardians has been too long
established to be seriously questioned.''* It may be here noted
that in passing upon the question as to where the temporary
custody of this infant should be lodged, the court was careful
to limit the privileges of the mother in that regard. Refer-
ence to the order shows that the parental rights accorded to
her pending final hearing were restricted and made subject to
certain discretionary powers affecting the custody of the child
as they were conferred upon the nurse Heffron, and in the
exercise of which discretion the mother was left *no right* of
interference. For instance, the order required the nurse to
take the child to the home of Mr. and Mrs. J. Ross Clark at
least daily, that is, at least once a day. No direction was
given as to the length of these daily visits, that matter being
also left to the discretion of the nurse. She was also au-
thorized, as her best judgment might direct, to take the child
there at such other times as she might deem appropriate and
advisable. Further, the order provided that the child might
be taken upon automobile rides by Mr. and Mrs. Clark, the
only limitation to the exercise of that privilege being that
the nurse should on such occasions accompany them. Doubt-
less the court, in view of the showing that the mother had
frequently absented herself from her child and had for two
nights and a day at a time remained in the same house with
her offspring without visiting it, deemed it best to see that
the nurse who had attended it so constantly for more than a
year should be retained as the actual custodian of the boy.
At any rate, this court cannot say, viewing the evidence upon
which the court was called upon to act, that the judge was
without authority to order the child into the limited custody
of its mother pending the day set when the question of the
mother's fitness to be the guardian of her son might be fully
inquired into. The fact that this court, under the evidence
exhibited, might have felt impelled to act differently than did
the superior court, and might have, under such evidence, re-
fused to disturb the custody of the minor pending final hear-
ing, when the matters in issue as to the abandonment by the
mother of her child, or her fitness to be made the guardian
of its person, could be fully inquired into, cannot have any
influence in the decision of the legal questions presented on
this application.

It appearing that the superior court has not exceeded its jurisdiction in making the order complained of, the writ herein sued out will not lie.

It follows that the petition should be denied, and it is so ordered.