[Civ. No. 6957.   Third Dist.   Sept. 30, 1943.]

Guardianship of the Person and Estate of RALPH L. REYN-
OLDS, a Minor. C. F. REYNOLDS, Appellant, v.
CHARLES C. LANDIS et al., Respondents.

Peters & Peters for Appellant.

Ware & Ware for Respondents.

PEEK, J.—This appeal is from an order of the trial court regulating the control of the minor by his guardian and paternal grandfather, C. F. Reynolds. The order provided that respondents, Dr. and Mrs. Landis, the maternal grandparents, should have the right of and custody of said minor from 9 o'clock a. m. each Saturday until 10 o'clock a. m. the following Sunday; that they should have the right to visit said minor in the home of the guardian at reasonable times and upon such reasonable notice as the guardian might require, and the further right to take the minor on two vacations during each summer, each vacation not to exceed one week or be within one month of the other, and upon reasonable notice to the guardian. The order further states that it is made expressly subject to the health of the minor, and reserves jurisdiction in the court to make other and further regulations upon application of either party after ten day's notice.

Appellant and Mrs. Reynolds reside in the city of Chico during the winter months, while during the summer and harvest season they reside at their ranch in Tehama County, a distance of approximately twenty-seven miles from Chico. The respondents, Dr. and Mrs. Landis, also reside in the city of Chico, where the doctor is a practicing physician and surgeon. A summer home is maintained by them at Lake Almanor.

Shortly after appellant's appointment as guardian on November 10, 1941, difficulties arose between the grandparents concerning respondents' visits with their grandchild at the home of appellant. Further difficulties developed concerning the taking of the child on vacations to respondents' summer home.

As a culmination of these misunderstandings respondents filed a petition "for instructions to guardian" wherein they prayed that the court order the guardian to show cause, if

any, why an order should not be made requiring the guardian to permit the minor to visit with them. After a hearing upon the petition the court made its order as above set forth.

Appellant contends that the court by its order usurped and encroached upon his rights as guardian in his relation to the ward; that the court was without authority, after issuance of the original order appointing the guardian, to modify or impose conditions different from those set forth in the original order, and that the subsequent order is against public policy, as a guardian is in "loco parentis" to the ward, and his discretion in relation to the ward cannot be limited nor assigned to one not in a like position.

It is respondents' answer to such contention that the trial court in entering the subsequent order acted within its jurisdiction, for "in the management and disposition of the person or property committed to him, a guardian may be regulated and controlled by the court" (sec. 1400, Prob. Code), subject to the qualification that the court "is to be guided by what appears to be for the best interest of the child in respect to its temporal and mental and moral welfare" (sec. 1406, Prob. Code), and that under the law of this state as repeatedly applied, such judgment, if based upon sufficient evidence and if not in abuse of sound discretion of the trial court will not be disturbed on appeal.

Appellant, however, argues that section 1500 of the Probate Code, which provides that "every guardian has the care and custody of the person of his ward and the management of his estate, or the care and custody of the person of his ward or the management of his estate, according to the order of appointment . . . ," and section 1512, which limits the imposition by the court of control or regulatory restrictions upon the guardian, to the time of the order of appointment, and then only "with the consent of such person," are controlling; that therefore, as the original order of appointment contained no such restrictions, the trial court was without jurisdiction in the subsequent proceeding to impose such regulations as are embodied in the contested order of the court. He further contends that respondents' interpretation of the statutes is in error in that section 1400 is a general section and has no particular import other than that the management by the guardian shall be in the manner provided by law; that the remaining pertinent part of section

1512, which provides that "when a person is appointed guardian of a minor, the court . . . may insert in the order of appointment, conditions not otherwise obligatory . . . ," is the enforcing statute providing the legal method by which the court may regulate the guardian, and which according to the terms thereof may be done only at the time the original order appointing the guardian is made.

Respondents, however, reply that limitations upon the court's authority are primarily in relation to the management of estates, wherein the limitations are established by statutes conferring upon the guardian express statutory rights and duties in connection with the estate. It is their further argument that the rights and limitations of guardians in connection with the person of the ward are far less specifically defined by statute and must therefore be further subject to the control of the courts under section 1400 because they are less limited and circumscribed by law.

In view of the questions raised it becomes necessary to determine first, whether or not the court had authority to make such order, as is contended by appellant, and second, whether the order usurps the rights of the guardian in his relationship with the ward. Although such questions present a problem of first impression in California no useful purpose would be served to restate at length the derivation of the present guardianship laws of this state in view of the many illuminating cases *(Lord v. Hough,* 37 Cal. 657), wherein the courts have had the historical element directly under consideration. Suffice it to say that in such matters our probate courts stand in the same position as the court of chancery, which court Blackstone described as being "the supreme guardian and has superintendent jurisdiction over all of the infants of the Kingdom." This rule has found approval in our Supreme Court in the case of *Sullivan v. Dunne,* 198 Cal. 183 [244 P. 343]. The court there stated that the powers of a probate court in respect to guardianship are analogous to those formerly vested in the courts of chancery.

It must be conceded that in the main the divisions of the Probate Code wherein the sections in question, 1400, 1406, 1500 and 1512, as adopted in 1931, are found, are but a reenactment of our original guardianship laws, which in turn are but a statutory codification of the common law. Section 2 thereof specifically states that "the provisions of this code so

far as they are substantially the same as existing statutes must be construed as continuations thereof and not as new amendments.''

Statutes are not presumed to alter the common law otherwise than the act expressly provides, and it is therefore of importance to determine whether or not the particular sections in question are in derogation of or an innovation upon the common law. (*Baker* v. *Baker*, 13 Cal. 87, 88; *Estate of Elizalde*, 182 Cal. 427 [188 P. 560].)

Following this yardstick and referring to the cited sections of the code we find that the phraseology contained in sections 1400 and 1406 is but a modern version of Blackstone Commentaries. Section 1400 also provides in part that ''the relation of guardian and ward is confidential, and is subject to the provisions of law relating to trusts.'' Early approval of this rule and further illustration of the analogy between the common and our statutory law are found in the case of *Lord* v. *Hough, supra,* wherein the court, citing the English case of *Beaufort* v. *Betty,* 1 P.Will. 702, said: ''It is contended that the court could not interfere, until the guardian had, in fact, abused his trust . . . this limitation upon the power of the court was denied by the Lord Chancellor, who remarked . . . *that preventive was better than punitive justice* . . . 'That if any wrong steps had been taken, which might not deserve punishment, yet, if they were such as induced the least suspicion of the infant's being like to suffer by the conduct of the guardians, or if the guardians chose to make use of methods that might turn to the prejudice of the infant, the court would interpose, and order the contrary, and that this was grounded upon the general power and jurisdiction which it had over all trusts, and a guardianship was most plainly a trust.' ''

This provision in the code also has been construed to mean that the guardian is therefore the trustee of his ward and exercises a delegated rather than an expressed trust as an arm of the court and subject to its control in the discharge of his duties. (*Fox* v. *Minor,* 32 Cal. 111, 112 [91 Am.Dec. 566].)

That this is the general and accepted rule is further amplified in 25 Am.Jur. p. 41, sec. 61: ''A guardian acts, as has been shown, as an arm or officer of the court from which it follows that the office or trust is administered under judicial control, and the guardian may be regulated and controlled in

the management and disposition of the property and person of the ward." So, also, it is stated in 31 C.J., 990, sec. 9:

"An infant is considered as a ward of the court having jurisdiction of his person, particularly of courts of equity; and the institution of any proceedings affecting his person is sufficient to make him a ward of the court. The matter of his custody is subject to control by the court, exercising its judicial discretion. . . . The controlling situation in such matter is the best interest of the child. *Any order or decree affecting his custody is subject to future control and modification by the court,* as subsequent conditions and circumstances may require for his welfare." (Italics ours.)

It is also a familiar rule that where a statute has been construed and is enacted in the same or substantially the same terms the Legislature is presumed to be familiar with its construction and to have adopted it as part of the law unless a definite construction is expressly required. (*Dalton* v. *Lelande,* 22 Cal.App. 481 [135 P. 54].)

We find nothing in the cases cited at variance with this rule. Rather we find consistent reiteration of the basic principle that "in guardianship matters the court acts for and on behalf of the child and must regard as a paramount consideration the interest and welfare of the child. To this every other consideration must yield." *(Guardianship of Smith,* 1 Cof. 169), and that "the anxious purpose of courts in deciding the relative rights of litigants . . . to the custody of infants, and to the accomplishment of which all other considerations are usually held to be secondary, is the welfare and best interest of the [child]." (Woerner Am. Law of Guardianship, 20.)

From an examination of the cases wherein the sections (1500 and 1512) relied upon by appellant have been under consideration, it would appear that the determination of the court was based upon questions of form and procedure, and rightfully so, for such sections come within the division of the code relating to estate management. *(Derrer* v. *Superior Court,* 129 Cal.App. 154 [18 P.2d 371]; *Titcomb* v. *Superior Court,* 220 Cal. 34 [29 P.2d 206]; *Browne* v. *Superior Court,* 16 Cal.2d 593 [107 P.2d 1, 131 A.L.R. 276].) The sections cited by respondent, however, 1400 and 1406, have been viewed by the courts in the light of the equities involved. As was stated in *Matter of Lee,* 165 Cal. 279, 281 [131 P. 749, 45 L.R.A.N.S. 91], in construing the original

provisions contained in the Civil Code, "Section 246 of the Civil Code limits the discretion of the court and declares that that discretion shall be exercised in favor of 'what appears to be for the best interest of the child in respect to its temporal and its mental and moral welfare'." See also *Guardianship of Pomin*, 137 Cal.App. 432 [30 P.2d 624]; *Estate of Howard*, 218 Cal. 607 [24 P.2d 486].

But appellant contends that even if the court could impose regulations and restrictions upon the guardian, such restrictions would have to be reasonable, not something "which he neither anticipated nor undertook as guardian and is therefore a direct and oppressive interference with his legal right and duty of custody and control of the ward," in that to comply with the order he would have to return to Chico every Saturday in order to have the ward available for respondents.

■ If our conclusion be correct it would be of little consequence whether the order complained of was anticipated or not by the guardian or whether to him it appeared as oppressive interference with his custody and control of the ward. The answer which immediately presents itself to the first complaint is that we know of no power compelling him to be guardian should he not so desire, and secondly, we find nothing in the order of the court compelling appellant to return to Chico each week end from his ranch in Tehama County so that the ward would be available for respondents on Saturday morning.

■ Nor do we find favor in appellant's suggested construction of section 1512 of the Probate Code. That section merely provides that the court *may* impose regulations or restrictions *not otherwise obligatory* subject to the consent of the guardian. A simple and apt illustration of the purpose and intent of that section would be that of a guardianship wherein the court in the order of appointment provided for a payment by the guardian of a certain sum per month for the support of the ward. Obviously such obligation was not something made mandatory upon him by the mere fact of the guardianship, and therefore was "not otherwise obligatory" as provided by the code.

■ But the same cannot be said of that which has to do with "what appears to be for the best interest of the child" as provided in section 1406 of the Probate Code, or, as stated in section 1400 of said code, *"in the management and disposi-*

*tion of the person . . . committed to him a guardian may be regulated and controlled by the court."* If this were not true then of what conceivable value would be sections 1400 and 1406, or for that matter of what value at all our long and well established principle that the paramount consideration is the interest and welfare of the child and "to this every other consideration must yield." *(Guardianship of Smith, supra.)* Therefore to say, as is contended by appellant that the only recourse is removal of the guardian under the provisions of section 1560 of the Probate Code is to do violence to such basic concept. Likewise if appellant's contentions were correct of what value would be the statement found in *Lord* v. *Hough, supra*, that "preventive was better than punitive justice," with the added emphasis that if wrong steps were taken by the guardian in which there was the slightest inference that the infant was likely to suffer therefrom, the court would interpose, and order to the contrary.

In the present case the trial court, in the first instance, found that the minor child could best be served by the appointment of a guardian, and as a result of such determination appellant was so appointed. The issues involved in that proceeding are no longer pending but the guardianship itself is not concluded—not until the guardian has been discharged. Jurisdiction of the court in this respect is a continuing one, and as an arm of the court the guardian in his duties acts under the authority of the supervision of the court which appointed him. ". . . No other court, we believe, has power to interfere with that continuing control. No other court could instruct him in his duties." *(Browne* v. *Superior Court,* 16 Cal.2d 593 [107 P.2d 1, 131 A.L.R. 276]; See also 16 Am.&Eng.Ency. of Law, 31; *Lord* v. *Hough, supra; Matter of Ross,* 6 Cal.App. 597, 599 [92 P. 671].)

If circumstances subsequent to the original order make it desirable and conducive to the comfort and well-being of the child that a modification thereof be made, the court, to alleviate or correct the situation, has jurisdiction to order that regulations be imposed upon the guardian, such as directing that a relative or other person should have access to the child whose custody is decreed in the guardian. (Estate of *Ross, supra; Hill* v. *Hill,* 49 Md. 450 [33 Am.Rep. 271]; Woerner Am. Law of Guardianship, 159; *Matter of Welch,* 74 N.Y. 299; *People* v. *Walts,* 122 N.Y. 238 [25 N.E. 266].)

Even to the extent as stated in *Fitzpatrick's Guardian* v.

*Baker,* 227 Ky. 788 [14 S.W.2d 181], wherein the court ordered that the wards be left temporarily with persons other than the guardian: "The guardian of an infant occupies a very important relation toward him [ward]. He has the right to control and direct his education, and this may change the course of the infant's life; for as the twig is bent, so often the tree is inclined . . . he should not so act as to deny them [wards] the friendship of their relatives without good cause."

In the case of *In re Lippincott,* 96 N.J.Eq. 260 [124 A. 532], strikingly similar to the present case, wherein the only relief asked by the petitioners, the ward's maternal grandparents, was that the orphaned child then in the custody of the paternal grandparents, be awarded to them for a portion of his time, there was presented to the trial court the identical problem as is presented herein. And likewise, there as here, the case was one of first impression. In the opinion of the New Jersey court granting petitioners custody for two months each summer, the Vice Chancellor said: "It [custody] must be granted, if at all, under the broad inherent jurisdiction of this court, in analogy to the power of the state as parens patriae. The interest of the state in the children thereof is so broad as to almost defy limitations." The court further said in its opinion: "His grandparents are all advanced in years, and probably none of them can rationally expect to live for a great while longer, certainly not until this boy attains his majority. Should the respondents [petitioners] have the misfortune to die first, it will be of inestimable advantage and benefit if there shall have been cemented between him and the petitioners that devotion and love that is materially fostered by the association of one with those in whose affection he should hold a prominent place." The court of appeals in *Lippincott* v. *Lippincott,* 97 N.J.Eq. 517 [128 A. 254], in affirming the judgment of the trial court and after a very concise statement of the history of guardianship from Biblical times to the present showing a continuity of the well established principles of guardianship, stated: "The only inquiry, therefore, before the learned Vice Chancellor, was as to how the best interests of the infant could be subserved, and we think his disposition of the matter was equitable and correct. That it will be for the material and moral interests of the child in its parental isolation to know and enjoy the affection and love of its mother's people will be conceded by all who are so fortunate as to be able to revive the delectable memories of a youth so placed. The situation thus presented is not

without its consoling compensation, for, as if by an ordinance of nature, the companionship of parental old age brings to the confiding nature of roseate youth the balmy benediction of an expiring day, the mellow and indelible memories of a family recessional.''

Other jurisdictions also have passed upon the question of the continuing powers of the court to control and supervise a guardian. As stated in *In re Nicoll,* 1 Johns Ch. (N.Y.) 25: ''This court has the care and protection of infants during their minority'' and ''the power of the court to intervene for the protection of the infant was not the creature of statute but is the inherent power in the court derived from the common law.'' (*People* v. *Mercein,* 8 Paige (N.Y.) 55.) Therefore it would appear from the consistent line of cases in this state and elsewhere that the jurisdiction of the probate court in the matter of guardianship is by the very nature thereof broad, comprehensive and plenary; that such powers continue throughout the life of the guardianship and may be invoked whenever the circumstances presented make necessary a modification of the original decree.

We must assume that the trial court herein has likewise determined that the interest and welfare of the minor could best be served by awarding to respondents a certain portion of the ward's time.

At the hearing of the petition evidence was introduced tending to show that such order would be for the material and moral well being of the child. Yet we find that the real emphasis throughout the entire controversy has been placed upon the alleged arbitrary and ill-founded objections of the guardian to the alleged reasonable requests of the respondents as set forth in their petition, such thought apparently being founded upon the invalid premise that the grandparents stand in the same position to the child as did his deceased parents. We cannot agree with such concept of the law of guardianship. But whatever the underlying cause of their disagreement, in the final analysis ''the good of the child is regarded as the controlling force . . . and the courts will always look to this rather than the whims and caprice of the parties.'' (*Crater* v. *Crater,* 135 Cal. 633 [67 P. 1049]; *Mack* v. *Mack,* 91 Ore. 514 [179 P. 557].)

The trial court has determined that it possessed jurisdiction sufficient to warrant its intervention in the guardianship, and in light of the evidence produced it cannot be said that its implied findings thereon are without support.

However, to deprive a guardian of his trust a showing of sufficient cause must be made. (*Lord* v. *Hough, supra.*) Necessarily such a question is one of fact and not of law to be determined in the discretion of the trial court. (*Clark* v. *Superior Court,* 20 Cal.App. 305, 309 [128 P. 1018].) The discretion of such court in the exercise of its power of supervision must not be arbitrary or capricious; it is a general discretion to be exercised within reason; not in disregard of, but with due regard to, the rights of all concerned. (*Lord* v. *Hough, supra.*) It is also true that a court may not substitute its judgment for that of the guardian unless it plainly appears that a case has been made justifying its interference with the discretion of the guardian as to what is for the best interests of the ward. (*Latterman* v. *Guardian Life Ins. Co.,* 280 N.Y. 102 [19 N.E.2d 978, 127 A.L.R. 450].)

Appellant has not shown wherein there has been such an abuse of discretion on the part of the trial court. Rather he has chosen to stand upon a strict interpretation of the law, which if concurred in by this court would nullify our well established principles of guardianship.

It is, therefore, elementary to add that unless the evidence in support of the judgment of the trial court is so slight as to indicate a want of ordinary good judgment or that there are no reasonable inferences to be drawn from the evidence to support the judgment, such order will not be disturbed on appeal.

The order is affirmed.

Adams, P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 22, 1943. Carter, J., and Schauer, J., voted for a hearing.