Opinion
 

 ELIA, Acting P. J.
 

 This case involves the contested guardianship of Kaylee J. in which the court appointed David K., Kaylee’s stepgrandfather, as her guardian over the objection of Kaylee’s mother, Susan G. David K. appeals from the portion of the appointment order directing the parties to develop a plan for reunification of Kaylee with Susan. David contends the court had no power to order reunification as part of a guardianship appointment and the court’s finding that reunification was in Kaylee’s interest was unsupported by the evidence. Susan argues that an appeal may not be taken from that order.
 

 A.
 
 Procedural History
 

 David K. filed the guardianship petition on November 20,1995. Susan G., the child’s birth mother, filed an objection to the petition. She asked the court to deny the petition and return her daughter to her care, custody, and control.
 

 The court received evidence showing the following. Susan was 16 years old when Kaylee was bom in March 1993. When Kaylee was about the age
 
 *1428
 
 of nine months, Susan decided she could no longer adequately provide for her daughter and voluntarily placed Kaylee with Kaylee’s paternal grandmother, Marty K„ and stepgrandfather, David K. Susan stayed with Marty and David for about two or three weeks and then left Kaylee in their care. At that time, it was Susan’s intention to allow the grandparents to adopt Kaylee. In the spring of 1994, Susan moved out of the area and did not visit her daughter for a period of approximately five months.
 

 Susan eventually signed a consent to adopt form. In late 1994, Marty and David initiated proceedings to adopt Kaylee.
 

 Marty and David have a daughter, who was bom on October 31, 1991. Kaylee and this girl have been raised as, and consider themselves, sisters. Kaylee considers David her daddy.
 

 In April 1995, Marty brought her daughter and Kaylee to Canada. They did not return to the area until July 1995. Marty and David separated and Marty asked David to keep the girls from July through September. During August 1995, in the marital dissolution proceeding between Marty and David, a court awarded temporary custody of both girls to David. Kaylee’s mother, Susan, was not aware of that custody proceeding.
 

 Susan married in September 1995. The grandparents’ adoption petition was dismissed in October 1995. David filed the guardianship petition in November 1995. After Susan learned of the pending marital dissolution and the guardianship petition, she decided it would be better to have her daughter return to her custody and refused to consent to the proposed guardianship.
 

 At the time they were interviewed in early 1996 by Dr. Powers, the court’s evaluator, Marty and David had reconciled. In March or April 1996, Susan reported to Dr. Powers she had seen Kaylee about 10 to 15 times during the previous 3 years. Under the court-ordered visitation schedule, Susan generally saw Kaylee every other weekend from January 2, 1996, until August 8, 1996.
 

 The court’s evaluator, Dr. Powers, concluded that it would be traumatic for Kaylee to be taken from her current family, i.e., from David. She believed that the best choice for Kaylee would be to remain in her current family. The court investigator, Janet Lee, stated in her report that she was unable to contact Susan at her last known address. In the investigator’s opinion, Kaylee’s best interest would be served by the guardianship. The declaration of Lisa Isaacs, a social worker employed by Legal Advocates for Children and Youth, stated that it was in Kaylee’s best interest to remain
 
 *1429
 
 with David, “who has demonstrated the ability to provide a stable, predictable and safe home.” The social worker recommended generous visitation with Kaylee’s mother, Susan.
 

 After an extensive hearing was completed on August 8,1996, Susan asked the court to grant temporary guardianship pending a transition period during which custody would be changed to her. The attorney for Kaylee requested the court to appoint David as the legal guardian and to allow Kaylee to remain in that home. David asked the court to grant a permanent guardianship, restricted visitation, and no reunification.
 

 The court then found that there was clear and convincing evidence that it would be detrimental for Kaylee to be placed with her mother at that time and it was in the child’s best interest to have David appointed as her guardian, and it appointed David as guardian of Kaylee’s person. However, the court also found that visitation and reunification with Kaylee’s mother, Susan, were appropriate and directed the parties to return to court on September 10, 1996, with a jointly developed reunification plan or with alternate proposals for reunification if agreement could not be reached. A written order to that effect was filed on September 10, 1996. The parties were unable to agree on a reunification plan and each filed a separate proposal.
 

 On November 4, 1996, the court referred the matter to family court services for “development of a visitation plan with a view toward eventual reunification of Kaylee with Mother” and ordered the parties to participate in a family court services evaluation.
 

 B.
 
 Appealable Order
 

 Respondent, Susan G., argues that this court lacks jurisdiction to consider this appeal because development of a reunification plan is merely an interim step in a process of decision and, consequently, must be considered interlocutory and unappealable. We conclude that it is reviewable on appeal.
 

 Appeals in guardianship proceedings lie only from orders specifically enumerated by the Probate Code. (Prob. Code, § 2750; see
 
 Conservatorship of Rich
 
 (1996) 46 Cal.App.4th 1233, 1235 [54 Cal.Rptr.2d 459].) An order granting letters of guardianship, as opposed to letters of temporary guardianship, is appealable. (Prob. Code, § 2750, subd. (a).) The court’s finding that reunification is in Kaylee’s interest is an unseverable part of the appealable appointment order since it goes directly to the issue of custody, which was decided by that order.
 

 
 *1430
 
 C.
 
 Reunification Planning
 

 Appellant argues that the court acted beyond its authority in directing the parties to develop a reunification plan as part of its order appointing him as Kaylee’s guardian. We agree.
 

 A court may appoint a guardian of the person of a minor upon hearing a guardianship petition “if it appears necessary or convenient.” (Prob. Code, § 1514, subd. (a).) “In appointing a guardian of the person, the court is governed by Chapter 1 (commencing with Section 3020) and Chapter 2 (commencing with Section 3040) of Part 2 of Division 8 of the Family Code, relating to custody of a minor.” (Prob. Code, § 1514, subd. (b).)
 

 Family Code section 3026 states: “Family reunification services shall not be ordered as a part of a child custody or visitation rights proceeding. Nothing in this section affects the applicability of Section 16507 of the Welfare and Institutions Code.” Section 16507 of the Welfare and Institutions Code provides in part: “Family reunification services shall be available without regard to income to families whose child has been adjudicated or is in the process of being adjudicated a dependent child of the court under the provisions of Section 300.”
 

 Family Code section 3040 provides in part: “(a) Custody should be granted in the following order of preference according to the best interest of the child as provided in Section 3011: [IQ (1) To both parents jointly ... or to either parent. . . . [QQ (2) If to neither parent, to the person or persons in whose home the child has been living in a wholesome and stable environment.” Family Code section 3011 specifies that the health, safety, and welfare of the child, any history of abuse by a parent, and the nature and amount of contact with both parents are relevant factors in making a determination of the best interest of a child.
 

 Family Code section 3041 states in part: “Before making an order granting custody to person or persons other than a parent, without the consent of the parents, the court shall make a finding that granting custody to a parent would be detrimental to the child and that granting custody to the nonparent is required to serve the best interest of the child.”
 

 An investigator’s report regarding a proposed guardianship must, unless waived by the court in a case involving a proposed relative
 
 [1]
 
 guardian, address “[t]he anticipated duration of the guardianship and the plans of both
 
 *1431
 
 natural parents and the proposed guardian for the stable and permanent home for the child.” (Prob. Code, § 1513, subd. (a)(4).)
 

 When the court appoints a nonparent guardian of the person of a child, the authority of the parent ceases. (Fam. Code, § 7505.) It is the guardian, not the parent, who has the care, custody, and control of the child. (Prob. Code, §§2350, 2351.) However, “[a] guardian or conservator is subject to the regulation and control of the court in the performance of the duties of the office.” (Prob. Code, § 2102.) The court has the continuing power to grant visitation rights in a probate guardianship proceeding.
 
 (Guardianship of Martha M.
 
 (1988) 204 Cal.App.3d 909, 911, 913 [251 Cal.Rptr. 567]; cf.
 
 Guardianship of Reynolds
 
 (1943) 60 Cal.App.2d 669 [141 P.2d 498].)
 

 Once a permanent guardianship of a child is established, it continues until terminated. A guardianship of the person terminates when the ward attains majority, dies, is adopted, or becomes emancipated. (Prob. Code, § 1600.) In addition, upon petition of the guardian, a parent, or the ward, the court may make an order terminating a guardianship if the court determines the guardianship is no longer necessary or termination is in the ward’s best interest. (Prob. Code, § 1601.)
 

 Significantly, where the proposed ward in a probate guardianship proceeding fits within the description of a dependent child under the Welfare and Institutions Code, the case shifts to a completely different track. “If the [probate] investigation finds that any party to proposed guardianship alleges the minor’s parent is unfit, as defined by Section 300 of the Welfare and Institutions Code, the case shall be referred to the county agency designated to investigate potential
 
 [2]
 
 (Prob. Code, § 1513, subd. (c).) If there is a referral, the investigation required by Welfare and Institutions Code sections 328 and 329 must be completed and provided to the court in which the guardianship proceeding is pending before the guardianship proceedings are completed. (Prob. Code, § 1513, subd. (c).)
 

 Welfare and Institutions Code sections 328 and 329 require a probation officer to investigate whether dependency proceedings in juvenile court
 
 *1432
 
 should be commenced. If such a proceeding is begun and the child is adjudged a dependent of the juvenile court, the juvenile court has exclusive jurisdiction to decide all custody issues. (Welf. & Inst. Code, §§ 302, subd. (c), 304.)
 

 If the juvenile court removes a child from a parent’s custody, it must, with exceptions, order child welfare services for the purpose of facilitating reunification of the family. (Welf. & Inst. Code, § 361.5.) Reunification services are strictly time limited. (See Welf. & Inst. Code, §§ 361.5, 366.21, 366.22, 16507.)
 

 Where reunification services are not successful, the juvenile court may, as part of the permanent plan to provide the child with a stable, permanent home, establish and supervise a legal guardianship. (Welf. & Inst. Code, §§ 360, 366.25, 366.26, 366.3.) The termination of such a guardianship is supervised by the juvenile court unless the termination is due to the emancipation or adoption of the minor. (Welf. & Inst. Code, § 366.3, subd. (b).) The juvenile court may order reunification services to a parent as statutorily provided if the guardianship is terminated. (Welf. & Inst. Code § 366.3, subd. (b).)
 

 When the various provisions of the Probate Code, Family Code, and Welfare and Institutions Code are read together, it is apparent that family reunification services are reserved to dependency proceedings, where a complex statutory scheme governs. In probate guardianship proceedings, like custody proceedings under the Family Code, the courts must determine which custody placement is in the best interest of the child but may not order reunification services.
 

 A guardian in a probate proceeding may be ordered to accommodate reasonable requests for visitation and contact with the mother or other person as may be in the best interest of the child. The frequency, duration, and nature of the visits are the subject of the court’s sound discretion. However, once a permanent guardianship is established and a nonparent guardian is appointed in a probate proceeding, the court has no authority to take steps to return custody to a parent unless and until a proper petition for termination of the guardianship of the person is before it. Court-ordered visitation may not be so extensive that it undercuts the probate guardianship.
 

 In ruling upon the guardianship petition in this case, the court sought to determine the best interest of Kaylee. However, it did so based upon a misapprehension regarding its authority to mandate reunification and acted beyond its discretion in directing the parties to develop a reunification plan.
 
 *1433
 
 The court’s finding regarding reunification and its appointment of a permanent guardian order are inconsistent since implicitly the court found that appointment of a guardian was only in Kaylee’s short-term best interest and reunification with the mother was in the child’s long-term best interest. The appointment of a permanent guardian should be based upon the overall best interest of a child.
 

 A court in a probate guardianship proceeding faces a difficult decision regarding a child’s best interest in ruling upon a contested guardianship petition arising from the voluntary, extended placement of a child with a nonparent. In determining such a case, the court must look to all the circumstances bearing upon the best interest of the child, including the child’s emotional well-being and need for continuity and stability in relationships and care. (Cf.
 
 Burchard
 
 v.
 
 Garay
 
 (1986) 42 Cal.3d 531 [229 Cal.Rptr. 800, 724 P.2d 486, 62 A.L.R.4th 237].)
 

 The order appointing a guardian is reversed, and the matter is remanded for further proceedings consistent with this opinion.
 

 Wunderlich, J., and Mihara, J., concurred.
 

 [1]
 

 or purposes of Probate Code section 1513, the definition of “relative” now includes, among others, “any person denoted by the prefix ‘grand’ or ‘great,’ or the spouse of any of
 
 *1431
 
 these persons, even after the marriage has been terminated by death or dissolution.” (Prob. Code, § 1513, subd. (g).) Where the proposed guardian is not a relative of the proposed ward and no adoption petition has been filed, “the local agency designated by the board of supervisors to provide public social services shall file a report with the court with respect to the proposed guardian of the same character required to be made with regard to an applicant for foster home licensure.” (Prob. Code, § 1543; see Prob. Code, § 1540.) The parties stipulated that David K. was a nonrelative for purposes of the hearing on the guardianship petition.
 

 [2]
 

 Welfare and Institutions Code section 300 does not actually define an “unfit” parent. That section describes the situations which bring a minor within the dependency jurisdiction of the juvenile court.